**UNITED STATES of America,**

v.

**John David STEVENSON**

**No. 01–CR–1312–ALL.**

United States District Court,
S.D. Texas.
Laredo Division.

Aug. 19, 2002.

John David Stevenson, Laredo, TX, pro se.

Indalecio R. Guardiola, U.S. Attorney's Office, Laredo, TX, for U.S.

### MEMORANDUM AND ORDER

ELLISON, District Judge.

Defendant John David Stevenson has been charged with unlawfully, knowingly and intentionally possessing with intent to distribute over 100 kilograms of marijuana. Pending before this Court is Defendant's motion to suppress. He contests the existence of probable cause arising from a canine alert that led to the search and seizure of marijuana in his possession. For the reasons stated below, the motion to suppress is DENIED.

## I. Factual Background

On November 12, 2001, Defendant was driving a van on Highway 59 when he came to a stop at the Border Patrol checkpoint located about sixteen miles west of Freer, Texas. Defendant was the only visible occupant in a van that had an open interior. While Defendant was answering inquiries about his citizenship, Carlo, a canine used for detection of both human and narcotics odors, alerted to the door on the driver's side. Border Patrol Agent Fernando Terrazas, Carlo's handler, searched the van and discovered a large bag containing marijuana in the back of the van. Defendant was arrested and charged with knowingly possessing in excess of 100 kilograms of marijuana.

## II. Discussion

■ Defendant first seeks to challenge the constitutionality of Border Patrol immigration checkpoints. He argues that the primary or secondary purpose of such checkpoints is the interdiction of narcotics, an impermissible purpose under *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). This Court, however, lacks the authority as well as the inclination to overrule the precedent adverse to Defendant's position established by the Supreme Court in *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), and its progeny in the Fifth Circuit. Brief, suspicionless seizures at fixed checkpoints designed to intercept illegal aliens are constitutional in today's jurisprudence. *See Edmond*, 531 U.S. at 37, 121 S.Ct. 447; *United States v. Machuca–Barrera*, 261 F.3d 425, 431 (5th Cir.2001); *see also United States v. Waldron*, 178 F.Supp.2d 738, 743 (W.D.Tex.2002) (affirming the primary immigration purpose of Border Patrol checkpoints and concluding that only a contrary opinion from a higher court can redesignate them as drug interdiction checkpoints).

■ Next, in order to challenge the canine's alert as the basis of probable cause for the search, Defendant questions the training of Carlo. Defendant claims that, while *United States v. Williams*, 69 F.3d 27 (5th Cir.1995), held that a showing of a dog's reliability is not required if probable cause is developed on site as result of a dog sniff of a vehicle, it did not resolve the issue of a dog's training. *See United States v. Hare*, 932 F.Supp. 852, 853 (E.D.Tex.1996) (stating that *"Williams* left unanswered question of whether proof of dog's training must be shown"). Defendant's arguments make a distinction between a showing of the dog's reliability, which is unnecessary under *Williams*, and a showing of training. In *Williams*, the Fifth Circuit declined to adopt the Sixth Circuit standard, set in *United States v. Diaz*, 25 F.3d 392, 394 (1994), requiring that the government prove the training and reliability of a canine before an alert can give rise to probable cause to search. Instead, the Fifth Circuit held that a showing of a canine's reliability is not required if probable cause is developed on site as result of the dog sniff of a vehicle. 69 F.3d at 28. The *Williams* opinion did not distinguish between training and reliability factors, and generally omitted any separate discussion of the training of canines.

Defendant urges this Court to follow the reasoning of two district court opinions that, according to Defendant, extrapolate from *Williams*'s silence a rule that the government has a distinct and separate evidentiary burden to prove that a canine is trained to detect the odor of the contraband seized. In *Hare*, the district court emphasized references to "trained" dogs in canine alert case law, and concluded that "it appears that some showing of training must be made." 932 F.Supp. at 853. Defendant also relies on *United States v. Outlaw*, 134 F.Supp.2d 807, 812 (W.D.Tex. 2001), where the court interpreted case

law dealing with canine alerts to contain an implicit requirement that the canine and handler team "have completed a minimum level of drug detection training and that the team possess a certain level of reliability." Specifically, Defendant argues that the government must prove that Carlo was trained to distinguish between the odor of Defendant, the only visible occupant in the van, and the marijuana hidden in the van. Since Carlo alerted to odors emanating from the driver's door, Defendant contends that Carlo might have been responding to Defendant's human odor rather than marijuana odor. Defendant argues, therefore, that if Carlo was alerting to Defendant's human odor rather than the marijuana's odor, Carlo's alert can not establish probable cause to search his van.

Defendant misstates *Williams* for the proposition that "*Williams* requires that the government prove how the canine is trained to distinguish between one and the other, if at all." Def.'s Mot. for Order at 8. In fact, *Williams* rejected this proposition by ruling that the dog's alert provides probable cause for a search. 69 F.3d at 28. This Court has also previously confronted this issue and held that "there is no requirement that the government prove that a canine alert related specifically to the contraband eventually discovered on the defendant." *United States v. Kelly*, 128 F.Supp.2d 1021, 1026 n. 6.

While this Court does not read *Williams* to foreclose legal challenges to a canine alert, this Court declines Defendant's invitation to fashion the additional requirement that the government prove the canine's training by producing certification documents and detailed training and field work records. The defendant in *Williams* unsuccessfully had argued in district court that a showing of the training and reliability of a drug dog was required prior to reliance on the dog's alert. 69 F.3d at 28. In affirming the district court's denial of the motion to suppress, the Fifth Circuit expressly declined to follow the training and reliability standard adopted by the Sixth Circuit in *Diaz*. Instead, *Williams* held that "a showing of the dog's reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle." *Id.* Even though *Williams* did not address the precise issue of training, it appears to dispose of Defendant's argument that a separate showing of training is required before a canine alert can establish probable cause for a warrantless search.

This Court's decision not to create a separate evidentiary showing of training does not mean that the government is absolved from verifying that a properly trained dog and handler conducted the challenged canine inspection. *See Outlaw*, 134 F.Supp.2d at 814 ("For instance, it stretches the bounds of jurisprudential imagination to believe that a positive alert by an untrained dog or by a dog with an extensive history of false positive alerts could be relied upon to establish probable cause without raising Fourth Amendment concerns."). Canine inspections at immigration checkpoints utilize dogs especially trained to detect contraband or hidden people in vehicles. When a dog trained to detect such contraband or people alerts in the near presence of a particular vehicle, "that action is sufficient to give rise to probable cause to search that vehicle." *United States v. Dovali–Avila*, 895 F.2d 206, 207 (5th Cir.1990). Courts have found that the government sufficiently verifies a canine alert when the agent handling the canine testifies under oath that his or her canine partner was so trained and certified to alert on the day in question. *See e.g., United States v. Sundby*, 186 F.3d 873, 876 (8th Cir.1999) (finding dog's reliability established by affidavit only stating dog's training and certification to detect contraband; detailed accounting of dog's track

record and education not required). Even the district court cases that Defendant relies upon so hold. *See Hare,* 932 F.Supp. at 852 (finding that canine handler's testimony that canine was certified in detecting narcotics on day of search was sufficient showing of dog's training); *Outlaw,* 134 F.Supp.2d at 814 (reading *Williams* to require that, once government proves drug detection training of canine inspection team, government does not have additional burden of producing field work records or detailed training records to establish reliability of canine alert).

It is worth noting that, even under the *Diaz* training and reliability standard, the Sixth Circuit has found that the testimony of the dog's handler suffices to establish a dog's training and reliability for the purpose of supporting a determination of probable cause. In *Diaz,* the Sixth Circuit rejected an argument similar to one that the Defendant makes here. The defendant in *Diaz* argued that the government could not establish the drug detection dog's training and reliability because the handler failed to produce the dog's training and performance records. 25 F.3d at 395. The court rejected the defendant's claim and determined that the dog's training and reliability were established by the district court's determination of the handler's credible testimony as to the dog's training, certification, and experience. *Id.* The court concluded that "[r]egarding the failure to prove [the canine's] training and reliability with training and performance records, this court has indicated that *testimony is sufficient to establish a dog's reliability in order to support a valid sniff.*" *Id.* at 396 (emphasis added).

 Recently, the Sixth Circuit revisited the issue in *United States v. Hill,* 195 F.3d 258 (1999), and affirmed its holding in *Diaz.* In *Hill,* the defendant also challenged the government's failure to produce records to establish the narcotics detecting

dog's training and reliability. 195 F.3d at 273. Specifically, the defendant challenged the district court's finding that the dog was properly trained and reliable. The defendant based his argument on the handler's testimony that he did not know exactly what training he was required to perform with the dog, and on the handler's failure to keep field records of the number of times the dog indicated a "false alert." *Id.* The Sixth Circuit affirmed the district court's finding that the dog was trained and reliable. From its review of the record, the court of appeals did not believe that the district court had erred in finding the dog trained and reliable. *Id.* The court summarized the testimony of the *trainer* of both the canine and the canine handler:

1. Both the handler and the dog were trained to detect narcotics.

2. The trainer described the extensive procedures under which the dog was trained, and stated that the dog passed tests at each level of its training, thus earning certification in drug detection. The dog also completed post-certification training.

3. After reviewing the training and performance records kept by the government on the dog, and, the trainer testified that, in his professional opinion, the dog was reliable.

*Id.* at 274. Thus, contrary to Defendant's optimistic reading of *Diaz,* the production of a dog's performance and training records is not necessary to establish a dog's training and reliability. Such a level of documentary evidence production has not even been mandated by the Sixth Circuit under its *Diaz*'s training and reliability standard, a standard which the Fifth Circuit explicitly declined to adopt in *Williams,* 69 F.3d at 28. Given that Fifth Circuit precedent on canine alerts is less stringent than the Sixth Circuit's,

this Court finds that credible testimony from a handler and/or trainer of a narcotics-detecting dog, as to the dog's training, certification, and performance, supports a determination that a dog is trained and reliable for purposes of establishing probable to search.

■ In this case, there is more than ample evidence showing that Carlo was trained and reliable when it alerted to Defendant's vehicle. On January 31, 2002, Agent Terrazas testified in this Court about his and Carlo's training, Carlo's past performance and Carlo's alert on the date in question. The government also produced the training certificates of both Agent Terrazas and Carlo. While this was sufficient to establish Carlo's training and reliability, even under the analysis of *Outlaw* and *Hare* that Defendant urges this Court to follow, this Court allowed the Defendant and the government to present additional arguments and evidence. At an evidentiary hearing held on May 16, 2002, both parties produced testimony from their own expert witnesses as to training, departmental policies and other matters related to the training and reliability of narcotics and human detection canines.

Agent Matthew Brian De Vaney, a training coordinator at the United States Border Patrol National Canine facility in El Paso, Texas, testified about the extensive procedures under which Carlo and Agent Terrazas were trained and certified as a canine inspection team. Although Agent De Vaney has not personally trained Agent Terrazas and Carlo, he has trained more than 100 dogs and 500 handlers at the Border Patrol National Canine facility. Agent De Vaney testified that Carlo is trained to detect odors of both humans and narcotics. Agent De Vaney stated that a handler usually does not know which target odor the dog detected but knows there is a target source. In response to Defendant questioning whether Carlo could have been alerting to the Defendant instead of the marijuana when it sniffed the driver side door, Agent De Vaney testified that, in the case of human odors, canines are conditioned to not respond to individuals within the canine's line of vision.

Agent De Vaney also described the Border Patrol's certification process as one based on some of the strictest international standards for canine detection of narcotics and human odors. Agent De Vaney testified that Agent Terrazas and Carlo had been separately evaluated and certified as an inspection team under the training certification process, and have passed their annual re-certification. Agent De Vaney stated that, according to Agent Terrazas, Carlo had one incident of a non-productive alert, where Carlo alerted but no tangible odor source was produced. In the case of a non-productive alert, Agent De Vaney explained that a dog might be detecting odor residues. If a dog registers an inordinate number of non-productive alerts, Agent De Vaney testified that Border Patrol policies instructed that the dog and its handler be brought to a control environment to be re-evaluated for their reliability. Finally, Agent De Vaney testified that, based on a discussion with Agent Terrazas and his review of the training and certification documents kept by Agent Terrazas on Carlo, his professional opinion was that Carlo had met all Border Patrol standards and was trained and reliable on the date of Defendant's search.

Defendant challenged the training, and thus, the reliability, of the canine inspection team with testimony from his expert witness, Dr. Dan Craig, D.V.M. In Dr. Craig's opinion, there is ambiguity as to whether Carlo was detecting odor from the Defendant or the marijuana when it alerted to odor emanating from the driver's side door. Dr. Craig criticized the Border

Patrol training certification procedure for omitting controlled negative testings, where a canine team inspects a vehicle containing one visible driver without the handler knowing if there are any tangible target odor sources. Furthermore, Dr. Craig noted that, while a dog theoretically can be trained to avoid the scent of visible persons, in his opinion, it would be impossible for a dog to distinguish between the threshold odor levels of one visible person and narcotics. While Dr. Craig could not deny that Carlo was trained and reliable under Border Patrol standards, he opined that those standards are inadequate and suggested improvements to the Border Patrol training certification procedure.

After weighing the evidence and arguments presented by the Defendant and the government, this Court finds that Carlo was, on November 12, 2001, properly trained and reliable for drug and human detection. Although the government was not required to prove Carlo's training beyond the testimony of its handler, the government has made an ample showing of the training and certification procedures that Carlo underwent as a Border Patrol canine. The extensive description of the Border Patrol training and certification procedures for canine inspection teams, which both Carlo and Agent Terrazas have completed, underscores this Court's opinion that a properly trained dog and handler is one of the most reliable forms of detecting concealed contraband. *See United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (acknowledging that a sniff inspection by a trained narcotics detection canine is one of the most effective investigative procedures that is limited in both the manner in which information is obtained and the content of information revealed). More importantly, the use of canine inspections cannot be underestimated in today's diverse society, when all of us-and particularly those involved in law enforcement-are concerned about ethnic profiling. While recognizing that canine inspections are not infallible, canines provide a means of crime detection that is neutral as to race, ethnicity, gender, age, nationality and other sensitive variables.[1]

### III. Conclusion

We find that Carlo was trained and reliable in detecting the odor of the contraband concealed in Defendant's van. Based on Carlo's alert, Border Patrol agents had probable cause to search Defendant's van. Accordingly, Defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

---

1. The Court is aware, of course, that, even if canines are entirely without bias, their handlers may not be. Defendant did not, however, offer any evidence as to possible handler bias in this case and the Court knows of none.