The STATE of Ohio, Appellant,

v.

NGUYEN et al., Appellees.

[Cite as *State v. Nguyen,* 157 Ohio App.3d 482, 2004-Ohio-2879.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–03–1152.

Decided June 4, 2004.

Julia R. Bates, Lucas County Prosecuting Attorney, Thomas A. Matuszak and John J. Weglian, Assistant Prosecuting Attorneys, for appellant.

Spiros P. Cocoves, Charles M. Boss and Adrian Cimerman, for appellees.

Jeffrey M. Gamso, for amici.

---

HANDWORK, Presiding Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the judgment of the Lucas County Court of Common Pleas, which granted the motion of defendants-appellees, Can T. Nguyen, Quang T. Ton, and Thach Wana, to discover the field performance records ("real world reports") of a trained and certified drug dog.

## Part I: Facts and Statement of the Case

{¶ 2} On January 1, 2003, Trooper Stacey Arnold of the Ohio State Highway Patrol was assigned to criminal patrol at the Findlay post. As a certified canine handler, Trooper Arnold was accompanied by her drug dog, Ringo. Shortly before 8:00 a.m., the trooper observed a motor vehicle on the Ohio Turnpike traveling at a speed well below the posted limit of 65 miles per hour. No conditions existed at that time that would indicate that the operator of the vehicle was required to drive so slowly. Trooper Arnold also noticed that the driver, who was later identified as Nguyen, was very rigid, staring straight ahead, and was driving with both hands on the steering wheel.

{¶ 3} The trooper decided to follow the vehicle, and she later saw it drift over the right edge line and then drift back onto the center dotted line. Trooper Arnold determined that these actions constituted a marked lane violation under R.C. 4511.33, and she initiated a traffic stop of the vehicle.

{¶ 4} During the stop, the trooper observed numerous cell phones inside the vehicle, a road atlas, and that the vehicle had a "lived-in" appearance. Because she suspected criminal activity, Arnold engaged appellees in conversation. She discussed the purpose of the stop, asked them about their destination, and asked Nguyen for his driver's license and the vehicle's registration.

{¶ 5} During this conversation, Trooper Arnold was unable to determine whether Nguyen was under the influence of alcohol or was overly tired. However, Nguyen was very nervous, his hands were trembling, and he stared straight ahead, refusing to make eye contact with the trooper. Wana and Ton were also very nervous. None of the defendants was able to locate the vehicle's registration.

{¶ 6} Through the window of the motor vehicle, the trooper saw two large, full, hockey style bags with a blanket thrown over them in the rear of the cargo area. Based on her training and experience, she believed that the bags contained illegal drugs. At that point, the trooper returned to her patrol car and decided that she would use Ringo in order to ascertain whether there were any drugs in appellees' vehicle. She then called for a backup unit.

{¶ 7} As the backup unit arrived, Trooper Arnold started to walk Ringo around the car; he immediately alerted at the left rear portion of the cargo area. Trooper Arnold ordered appellees out of their vehicle. She proceeded to open the back hatch, pulled out the duffel bags, and opened them. The bags contained more than 100 pounds of B.C. (British Columbia) bud marijuana.

{¶ 8} Appellees were arrested and each was charged with one count of trafficking in marijuana, a violation of R.C. 2925.03(A) and R.C. 2925.03(C)(3)(f),

and one count of possession of marijuana, a violation of R.C. 2925.11(A) and (C)(3)(f). Different counsel was appointed for each appellee.

{¶ 9} Each appellee filed a motion to suppress the physical evidence seized, asserting that the stop, detention, and search violated the Fourth Amendment to the United States Constitution. They "orally amended" their motions to include an allegation that Ringo was unreliable; therefore, Trooper Arnold lacked probable cause to engage in a warrantless search of their automobile.

{¶ 10} In addition, appellees made discovery requests in which they asked the trial court to disclose information about Ringo that included his real world reports. The state provided Ringo's training and certification records, his veterinarian records, and his real world reports that occurred in those instances where (1) Ringo alerted to the presence of the odor of drugs that he was trained to detect and these drugs were actually discovered or their recent presence was confirmed; and (2) Ringo did not alert to the presence of the odor of drugs he was trained to detect but these drugs were actually discovered or their recent presence was confirmed. The state declined to produce Ringo's real world records where (1) Ringo alerted to the presence of the odor of drugs that he was trained to detect, but those drugs were neither discovered nor their recent presence confirmed; and (2) Ringo did not alert to the presence of the odor of drugs that he was trained to detect, but those drugs were neither discovered nor their recent presence confirmed.

{¶ 11} Appellees subsequently filed a supplemental discovery request in which they asked the trial court to, among other things, compel the production of the real world reports that were not disclosed by appellant, the state of Ohio. After a joint hearing on the motion to suppress and discovery issues, the trial court determined that, because they are material to proof of his reliability, all of Ringo's real world reports are discoverable under Crim.R. 16(B)(1)(c).

{¶ 12} Appellant filed a timely motion for leave to appeal. We granted that motion. Appellant asks this court to consider the following assignment of error:

{¶ 13} "The trial court erred when it ordered the prosecution to disclose the contested canine reports to the defendants."

{¶ 14} Appellant contends that the trial court's discovery order is contrary to law because canine real world reports are immaterial to a determination of reliability and are, therefore, not subject to disclosure under Crim.R. 16. Before addressing appellant's assignment of error, we must determine the appropriate standard to employ in our review of the case sub judice.

## Part II: Standard of Review

{¶ 15} This case provides an interesting issue as it relates to the standard of review to be employed by this court. The prosecution stated in its motion that

discovery motions are governed by an abuse of discretion standard. That assertion is generally correct, as this and other courts have noted.[1] In fact, if sanctions are levied by the trial court under Crim.R. 16(E)(3) for failing to comply with its order to produce discovery under Crim.R. 16(B)(1)(c), abuse of discretion is the proper standard for the review of those sanctions.[2] However, this case is different. This court recognizes that when an "assignment of error calls for us to review a legal question, we review it de novo."[3]

{¶ 16} A de novo review is proper in certain situations that are, arguably, present here. In *State v. Today's Bookstore, Inc.*, the Second District Court of Appeals ruled that "[w]hen the trial court's discretionary decision is based on a misconstruction of the law or an erroneous standard, that decision will not be accorded the deference that is usually due to the trial court, but instead will be reviewed de novo; it is appropriate for an appellate court to substitute its judgment for that of the trial court where matters of law are involved."[4] In fact, in the leading case on this issue, *Castlebrook, Ltd. v. Dayton Properties Limited Partnership*, the court stated that "[i]n determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law."[5] The court then went on to state that "[c]onfusion has been engendered by an unfortunate choice of words when courts have said on occasion that an abuse of discretion connotes 'more than an error of law.' It would be more accurate to say that an abuse of discretion is 'different from an error of law.' A trial court's purely legal determination will not be given the deference that is properly accorded to the trial court with regard to those determinations that are within its discretion."[6]

---

1.  *State v. Henes* (Nov. 2, 2001), 6th Dist. No. L–01–1222, 2001 WL 1346116. See, also, *State v. Laskey* (1970), 21 Ohio St.2d 187, 192, 50 O.O.2d 432, 257 N.E.2d 65, vacated on other grounds (1972), 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753; *State v. Shoop* (1993), 87 Ohio App.3d 462, 469, 622 N.E.2d 665.

2.  *State v. Rotarius*, 8th Dist. No. 78766, 2002-Ohio-666, 2002 WL 337699; *State v. Senz* (July 31, 1996), 9th Dist. No. 2544–M, 1996 WL 425915.

3.  *Ohio Dept. of Natural Resources v. Hughes* (2001), 145 Ohio App.3d 202, 206, 762 N.E.2d 422, citing *Castlebrook, Ltd. v. Dayton Properties L.P.* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808.

4.  *State v. Today's Bookstore, Inc.* (1993), 86 Ohio App.3d 810, 823, 621 N.E.2d 1283, citing *Castlebrook, Ltd. v. Dayton Properties L.P.* (1992), 78 Ohio App.3d 340, 604 N.E.2d 808.

5.  *Castlebrook, Ltd. v. Dayton Properties L.P.*, 78 Ohio App.3d at 346, 604 N.E.2d 808.

6.  Id.

{¶ 17} Other appellate courts, moreover, adopted *Castlebrook* and applied its rule to criminal cases.[7]  Additionally, the Eighth District Court of Appeals found that "[w]hile an appellate court will give great deference to the factual findings of a trial court, an appellate court must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case."[8]  Indeed, the Fourth District Court of Appeals employs a de novo review when issues of materiality under Crim.R. 16 are involved.[9]

{¶ 18} Here, as will be addressed more fully later, the trial court employed the improper legal standard when it determined that the real world records for drug dog Ringo were material and, thus, discoverable under Crim.R. 16(B)(1)(c). Therefore, even though in a normal case an abuse of discretion standard may be used for an objection to a criminal discovery decision, this court's review is de novo because the trial court's decision was "based on a misconstruction of the law or an erroneous standard."[10]

### Part III: Materiality Under Crim.R. 16

{¶ 19} The standard for materiality under Crim.R. 16 is defined by the Ohio Supreme Court in the syllabus to *State v. Johnston*.[11]  That court ruled that "[i]n determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.  This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense.  (*United States v. Bagley* [1985], 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, followed.)"[12]  This court and others,

---

7.  *State v. Musick* (1997), 119 Ohio App.3d 361, 367, 695 N.E.2d 317; *State v. Wright* (Sept. 27, 2001), Columbiana App. No. 97 CO 35, 2001 WL 1685275; *State v. Bradford* (Nov. 1, 1999), 5th Dist. No. 99–CA–108, 1999 WL 1071967.

8.  *State v. Williams* (1994), 94 Ohio App.3d 538, 543, 641 N.E.2d 239, citing *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.  See, also, *State v. Peatee* (Dec. 31, 1998), 6th Dist. No. WD–98–032, 1998 WL 904931.

9.  *State v. Hesson* (1996), 110 Ohio App.3d 845, 850–852, 675 N.E.2d 532.  See, also, *State v. Linscott* (Aug. 22, 1995), 9th Dist. Nos. 94CA1633 and 94CA1634, 1995 WL 500512.

10.  *State v. Today's Bookstore, Inc.*, 86 Ohio App.3d at 823, 621 N.E.2d 1283, citing *Castlebrook, Ltd. v. Dayton Properties L.P.* (1992), 78 Ohio App.3d 340, 604 N.E.2d 808.

11.  *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of syllabus.

12.  Id.

furthermore, have expressly adopted this rule.[13]  In fact, the Fourth District Court of Appeals applied this standard directly to materiality under Crim.R. 16(B)(1)(c).[14]

{¶ 20} Additionally, it is of great concern that, in the case under consideration, the trial court chose to cite a case that misstates the accepted federal standard for materiality in order to make the real world records of drug dog Ringo discoverable.  The trial court cites *United States v. Lloyd* from the United States Court of Appeals for the District of Columbia Circuit to state that in order for evidence to be discoverable it needs to "bea[r] some abstract logical relationship to the issues in the case."[15]  This misquotes the Fifth Circuit Court of Appeals in the case of *United States v. Ross*, which ruled, "[m]ateriality means *more than* that the evidence in question bears some abstract logical relationship to the issues in the case. * * *  There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor."[16]  (Emphasis added.)  The *Ross* standard was recently reaffirmed by the United States Court of Appeals for the Eleventh Circuit.[17]

{¶ 21} As stated above, the trial judge, by using a standard for materiality that is not used by Ohio courts or by the federal system, caused his discovery decision to be "based on a misconstruction of the law or an erroneous standard."[18]  Therefore, his judgment is subject to de novo review.

### Part IV:  Materiality of Real World Drug Dog Records to Determine Reliability

{¶ 22} The United States Supreme Court in *United States v. Place* ruled that a canine sniff was "*sui generis*,"[19] and that it was not a search under the Fourth Amendment.[20]  This court adopted that rule expressly in *State v. Palicki*.[21]  We

---

13.  *State v. Hill* (1992), 64 Ohio St.3d 313, 327–328, 595 N.E.2d 884; *State v. Montgomery* (Feb. 5, 1999), 6th Dist. No. L–98–1026, 1999 WL 55852.

14.  *State v. Steen* (June 28, 1994), 4th Dist. No. 93CA490, 1994 WL 322963.

15.  *United States v. Lloyd* (C.A.D.C.1993), 992 F.2d 348, 351.

16.  *United States v. Ross* (C.A.5, 1975), 511 F.2d 757, 762–763.

17.  *United States v. Jordan* (C.A.11, 2003), 316 F.3d 1215, 1251.

18.  *State v. Today's Bookstore, Inc.*, 86 Ohio App.3d 810, 823, 621 N.E.2d 1283.

19.  "Of its own kind or class; unique or peculiar."  Black's Law Dictionary (7th Ed.Rev.1999) 1148.

20.  *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110.

also held, in *State v. Bolding*, that when a dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle.[22] This precept was recently reaffirmed by this court.[23] As this is the well-established precedent on the issue of alerts made by drug dogs, the question before us is whether the defense can challenge a finding of probable cause based upon an alert. The answer, as will be discussed fully below, is to attack the reliability of the drug dog. The method that defense lawyers employ to accomplish this is simple: they attempt to use the real world reports for the drug dog against it. Despite the fact that courts do allow the defense to use the drug dog's training and certification records to attack its reliability, a majority of courts disagree with that method. This court, therefore, must decide whether real world records are material under Crim.R. 16, and can, therefore, be used by the defense to challenge the drug dog's reliability when drugs are found.

### Subsection A:  Canine Reliability in Ohio State Courts

{¶ 23} Even though no major canine reliability cases have been decided by the Ohio Supreme Court, appellate courts have addressed, at least tangentially, the issue of the reliability of drug dogs. As stated above, this court has issued three major cases concerning drug dogs, *State v. Palicki*, which is widely accepted throughout the state, *State v. Bolding*, and *State v. Serrano*. In *Palicki*, this court placed importance on the fact that the sniffs being challenged were done by "trained dogs."[24] In *Bolding*, this court further held that "a properly accredited drug dog alert is sufficient to give an officer probable cause to believe that a vehicle contains narcotics."[25] Appellant argues, therefore, that this court emphasizes the importance of proper training and certification for drug dogs. We agree that this is a valid assertion. Nonetheless, appellant also suggests that by using the words "trained" and "accredited," this court is not of the opinion that real world records are necessary to determine whether a canine is reliable. That assertion, however, is too broad because neither this court nor, for that matter, any other court in Ohio, has directly decided that issue.

{¶ 24} Four appellate courts in Ohio, however, have peripherally commented on drug dog reliability, but none of those courts have directly confronted the issue of

---

21.  *State v. Palicki* (1994), 97 Ohio App.3d 175, 180–181, 646 N.E.2d 494.

22.  *State v. Bolding* (May 28, 1999), 6th Dist. No. E–97–115, 1999 WL 334494. See, also, *Florida v. Royer* (1983), 460 U.S. 491, 505–506, 103 S.Ct. 1319, 75 L.Ed.2d 229.

23.  *State v. Serrano*, 6th Dist. No. L–03–1096, 2004-Ohio-1640, 2004 WL 628970, at ¶ 15.

24.  *State v. Palicki*, 97 Ohio App.3d at 180, 646 N.E.2d 494.

25.  *Bolding*, supra.

the materiality of real world records.[26]   The Second District Court of Appeals, in *State v. Price,* held that "a positive indication by a properly trained dog is sufficient to establish probable cause for the presence of a controlled substance."[27] Moreover, "the use of trained dogs has proved to be an effective and reliable means of apprehending drug couriers."[28]   No mention was made of real world records in *Price.*

{¶ 25} The Fifth District Court of Appeals, in *State v. Crowder,* spoke more directly to the issue of canine reliability because the appellant complained that the drug dog was "insufficiently trained and not reliable."[29]   Nevertheless, the court found this complaint to be baseless because, even though drugs were found only half of the time when this particular drug dog alerted in the real world, the challenged canine was properly trained.   In fact, the court made it a point to explain that drug dogs are trained to detect "residual odor," which means that a properly trained canine can smell drugs that were recently present even when those drugs are not physically present and, thus, cannot be collected at the time of the alert.[30]

{¶ 26} A trial court in the Fifth District went even further in its analysis of drug dog reliability, and appeared to suggest that real world records are not necessary.[31]   The trial judge in *Knight* held:

{¶ 27} "This court finds that reliability is initially proven by evidence of training and certification.   The presumption of reliability obtained from the training and certification evidence may be thereafter attacked by evidence focused upon the training procedures, certification standards, or other factors, such as the health of the dog, which relate to the issue of reliability."[32]

{¶ 28} The *Knight* court further explained that "no evidence was presented to the contrary to rebut the presumption" that the canine was reliable.[33]   This

---

26.  For the sake of organization, in this section as well as in the sections dealing with federal courts and other state courts, cases will be discussed numerically or with states, alphabetically, in order to provide an overview of how certain courts view this issue.

27.  *State v. Price* (July 10, 1998), 2d Dist. No. 16591, 1998 WL 380503.   (Citation omitted.)

28.  Id.

29.  *State v. Crowder* (May 30, 2000), 5th Dist. No. 1999CA00386, 2000 WL 874681.

30.  Id.

31.  *State v. Knight* (1997), 83 Ohio Misc.2d 79, 679 N.E.2d 758.

32.  Id., 83 Ohio Misc.2d at 86, 679 N.E.2d 758.

33.  Id.

decision mentions that the dog never falsely alerted in the field, but this was only one of many factors reviewed by the common pleas court in making its determination of reliability.[34]

{¶ 29} The Eighth District Court of Appeals, in *State v. Alexander*, a case where a drug dog failed to alert to the presence of drugs, stated that although "a positive dog alert can be sufficient to establish probable cause to support a search warrant, * * * [that does] not mean that a dog's failure to alert on an item means that no probable cause would exist."[35] In an aside, the court did, nevertheless, mention federal cases that stand for the proposition that a drug dog alert creates probable cause unless "the particular dog had a poor accuracy record."[36] The *Alexander* decision, however, did not describe if or how real world records of the canine challenged figure into that determination of reliability.

{¶ 30} Although the Ninth District Court of Appeals decided several cases where reliability was an issue and it emphasized training and certification over the real world experience of the canine,[37] the leading case in that jurisdiction is *State v. Carlson*, which ruled that "once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband."[38] In fact, the court commented that it may appear that a dog may have falsely alerted when, in reality, residual odors were present.[39] However, the appellant in *Carlson* did not directly challenge the drug dog's accuracy; thus, the Ninth District expressed no opinion on the issue.[40] Again, the *Carlson* court alluded to the same federal cases as the Eighth District did.[41]

{¶ 31} In conclusion, no Ohio court ever stated whether real world records are material under Crim.R. 16 and allowed their use by the defense to challenge a

---

34. Id., 83 Ohio Misc.2d at 86–87, 679 N.E.2d 758.

35. *State v. Alexander*, 151 Ohio App.3d 590, 2003-Ohio-760, 784 N.E.2d 1225, at ¶ 56.

36. Id., citing *United States v. Ludwig* (C.A.10, 1994), 10 F.3d 1523, 1527.

37. *State v. Anderson* (Dec. 13, 1995), 9th Dist. No. 95CA006052, 1995 WL 734036; *State v. Calhoun* (May 3, 1995), 9th Dist. No. 94CA005824, 1995 WL 255929; *State v. Louis* (May 10, 1989), 9th Dist. No. 13742, 1989 WL 50681.

38. *State v. Carlson* (1995), 102 Ohio App.3d 585, 600, 657 N.E.2d 591.

39. Id.

40. Id., 102 Ohio App.3d 585, 657 N.E.2d 591, at fn. 6.

41. Id. See, also, *Alexander*, 2003-Ohio-760, at ¶ 56.

specific drug dog's reliability when narcotics are found. Accordingly, we turn to federal case law and those cases decided in other states for guidance.

### Subsection B: Canine Reliability in Federal Courts

{¶ 32} Federal courts tend to follow the national trend, which states that a drug dog's training and certification records can be used to uphold a finding of probable cause to search and can be used to show reliability, if required, but that canine reliability does not always need to be shown by real world records.

{¶ 33} The leading case for the majority view is the Fifth Circuit case of *United States v. Williams*,[42] and the leading case for the minority view is the Sixth Circuit case of *United States v. Diaz*.[43] Before our analysis of specific cases that illustrate the differing points of view, it will be helpful to identify, in general, the views of the different federal circuits. All of the federal circuit courts of appeals, the First,[44] Second,[45] Third,[46] Fourth,[47] Fifth,[48] Sixth,[49] Seventh,[50] Eighth,[51] Ninth,[52] Tenth,[53] Eleventh,[54] District of Columbia,[55] and United States

---

42.  *United States v. Williams* (C.A.5, 1995), 69 F.3d 27.

43.  *United States v. Diaz* (C.A.6, 1994), 25 F.3d 392.

44.  *United States v. Owens* (C.A.1, 1999), 167 F.3d 739, 749–750; *United States v. Meyer* (C.A.1, 1976), 536 F.2d 963, 966; *United States v. Race* (C.A.1, 1976), 529 F.2d 12, 14.

45.  *United States v. Waltzer* (C.A.2, 1982), 682 F.2d 370, 372; *United States v. Johnson* (C.A.2, 1981), 660 F.2d 21, 22–23.

46.  *United States v. Massac* (C.A.3, 1989), 867 F.2d 174, 176.

47.  *United States v. Jeffus* (C.A.4, 1994), 22 F.3d 554, 557; *United States v. Robinson* (C.A.4, 1983), 707 F.2d 811, 815.

48.  *United States v. Outlaw* (C.A.5, 2003), 319 F.3d 701, 704; *United States v. Williams*, 69 F.3d 27, 28; *United States v. Daniel* (C.A.5, 1993), 982 F.2d 146, 151, fn. 7; *United States v. Dovali–Avila* (C.A.5, 1990), 895 F.2d 206, 207–208.

49.  *United States v. Berry* (C.A.6, 1996), 90 F.3d 148, 153–154.

50.  *United States v. Klein* (C.A.7, 1980), 626 F.2d 22, 27.

51.  *United States v. Sundby* (C.A.8, 1999), 186 F.3d 873, 876; *United States v. Delaney* (C.A.8, 1995), 52 F.3d 182, 188–189; *United States v. Maejia* (C.A.8, 1991), 928 F.2d 810, 815.

52.  *United States v. Lingenfelter* (C.A.9, 1993), 997 F.2d 632, 639; *United States v. Spetz* (C.A.9, 1983), 721 F.2d 1457, 1464.

53.  *United States v. Shayesteh* (Nov. 24, 1998), C.A.10 No. 97–4111, 166 F.3d 349; *United States v. Kennedy* (C.A.10, 1997), 131 F.3d 1371, 1378; *United States v. Ludwig* (C.A.10, 1993), 10 F.3d 1523, 1527–1528; *United States v. Nielsen* (C.A.10, 1993), 9 F.3d 1487, 1491; *United States v. Gonzalez–Acosta* (C.A.10, 1993), 989 F.2d 384, 388–389; *United States v. Venema* (C.A.10, 1977), 563 F.2d 1003, 1007.

Military[56] Circuits have followed the majority rule at least once. The Sixth,[57] Seventh,[58] Ninth,[59] and Tenth[60] Circuits, however, do not always expressly follow the majority rule. That said, there are a number of essential cases that develop the issue to the point where this court can determine which view to adopt in this district.

{¶ 34} At the outset, we note that courts hold that when another means of determining probable cause exists in addition to a drug dog alerting, the canine's reliability need not be shown to validate the search.[61] But when the drug dog's alert is the only means supporting probable cause, courts insist that some evidence be provided by the prosecution to show that the canine is reliable.[62] The issue in federal courts is whether establishing that a drug dog is trained or certified equates with reliability or whether real word records must be examined.

{¶ 35} A number of federal courts hold that the alert of a trained drug dog to a vehicle is sufficient to sustain a finding of probable cause without any additional evidence that the challenged canine was reliable.[63] Other courts decided that showing that the challenged canine is trained satisfies the requirement that drug dogs need to be reliable.[64] Still other courts decided that a showing that the

---

54. *United States v. Banks* (C.A.11, 1993), 3 F.3d 399, 402; *United States v. Sentovich* (C.A.11, 1982), 677 F.2d 834, 838, fn. 8.

55. *United States v. Trayer* (C.A.D.C.1990), 898 F.2d 805, 808.

56. *United States v. Unrue* (U.S.C.M.A.1973), 47 C.M.R. 556, 558, 560, 1973 WL 14783; *United States v. Thomas* (U.S.N.1975), 50 C.M.R. 114, 116–117, 1975 WL 15554.

57. *United States v. Littleton* (C.A.6, 2001), 15 Fed. Appx. 189, 192–193; *United States v. Hill* (C.A.6, 1999), 195 F.3d 258, 273–274; *United States v. Diaz,* 25 F.3d at 393–396; *United States v. $67,220.00 in United States Currency* (C.A.6, 1992), 957 F.2d 280, 285–286.

58. *United States v. Limares* (C.A.7, 2001), 269 F.3d 794, 797–798.

59. *United States v. Spetz,* 721 F.2d 1457, at 1464.

60. *United States v. Ludwig* (C.A.10, 1993), 10 F.3d 1523, 1527–1528.

61. *United States v. Littleton,* 15 Fed. Appx. at 192–193; *United States v. Spetz,* 721 F.2d at 1464–1465.

62. *United States v. $67,220.00 in United States Currency* (C.A.6, 1992), 957 F.2d 280, 285–286; *United States v. Colon* (D.P.R.1994), 845 F.Supp. 923, 928.

63. *United States v. Williams,* 69 F.3d at 28; *United States v. Jeffus* (C.A.4, 1994), 22 F.3d 554, 557; *United States v. Dovali–Avila,* 895 F.2d at 207–208; *United States v. Beale* (C.A.9, 1984), 736 F.2d 1289, 1291; *United States v. Venema,* 563 F.2d 1003, at 1007; *United States v. Banks,* 3 F.3d 399, 402; *United States v. Meyer* (C.A.1, 1976), 536 F.2d 963, 966; *United States v. Thomas,* 50 C.M.R at 116–117.

64. *United States v. Massac,* 867 F.2d at 176; *United States v. Berry,* 90 F.3d at 153–154; *United States v. Sentovich* (C.A.11, 1982), 677 F.2d 834, 838, fn. 8.

canine is certified is enough evidence to state that the drug dog's performance is reliable.[65] A new trend in some federal courts stresses that when the state demonstrates that the drug dog is trained and certified, it negates any need to establish the reliability of the challenged canine.[66] Indeed, one commentator suggests licensing the handler and the drug dog to equitably determine the issue of reliability.[67] In such a scenario, the "licensed dog and handler would be presumed reliable. Therefore, any evidence obtained by the team would be admissible, provided that it was not excluded for other reasons. This presumption would shift the burden of production to the defendant to produce evidence challenging the reliability of the detector team. Since standards exist specifically defining the various requirements for licensing, the defense would have a framework upon which to construct a rebuttal to the presumption."[68]

{¶ 36} A minority of courts, however, have considered that, in addition to proof of training, a drug dog's real world success is a factor in determining whether the challenged canine is reliable.[69] In fact, on one occasion, the Seventh Circuit allowed a drug dog to be deemed reliable by looking at its real world record alone.[70] As mentioned previously, the Tenth Circuit, in *United States v. Ludwig*, stated, "[A] dog alert might not give probable cause if the particular dog had a poor accuracy record, but the evidence [in this case] shows that the dog in this case has never falsely alerted."[71] Nonetheless, the *Ludwig* court also observed that although the defendant cited "several cases of mistaken dog alerts, a dog alert usually is at least as reliable as many other sources of probable cause and is

---

65. *United States v. Owens,* 167 F.3d at 749–750; *United States v. Patty* (E.D.Mich.2000), 96 F.Supp.2d 703, 708; *United States v. Delaney* (C.A.8, 1995), 52 F.3d at 188–189; *United States v. Shayesteh,* supra.

66. *United States v. Sundby,* 186 F.3d at 876; *United States v. Kennedy* (C.A.10, 1997), 131 F.3d 1371, 1376–1377; *United States v. Outlaw* (W.D.Tex.2001), 134 F.Supp.2d 807, 811–816, affirmed in part and remanded (on a sentencing issue), *United States v. Outlaw,* 319 F.3d at 704; *United States v. Hare* (E.D.Tex.1996), 932 F.Supp. 852, 852–853; *United States v. Stevenson* (Aug. 9, 2002), S.D.Tex. No. L–01–1312.

67. Comment: Establishing a Presumption of Reliability for Detector Dog Teams Used in Airports in Light of the Current Terrorist Threat (2002), 28 Dayton L.Rev. 89, 99–100.

68. Id. (Citations omitted.)

69. *United States v. Hill,* 195 F.3d at 273; *United States v. Lingenfelter,* 997 F.2d at 639; *United States v. Maejia,* 928 F.2d at 815; *United States v. Waltzer,* 682 F.2d at 372; *United States v. Klein,* 626 F.2d at 27; *United States v. Neatherlin,* 66 F.Supp.2d at 1160; *United States v. Nielsen,* 9 F.3d at 1491; *United States v. $80,760.00 in U.S. Currency* (N.D.Tex.1991), 781 F.Supp. 462, 478; *United States v. Cantrall* (D.Kan.1991), 762 F.Supp. 875, 881–882.

70. *United States v. Limares* (C.A.7, 2001), 269 F.3d 794, 797–798.

71. Id., 10 F.3d at 1528.

certainly reliable enough to create a 'fair probability' that there is contraband. We therefore have held in several cases that a dog alert without more gave probable cause for searches and seizures."[72]

{¶ 37} Courts are, therefore, reticent in placing too much emphasis in real world reports because of a trained drug dog's ability to alert to residual odor. In fact, many courts have commented upon a drug dog's ability to detect residual odor.[73] The Fifth Circuit even commented that a certain drug dog was able to detect "residual scents lingering for up to four to six weeks."[74] Moreover, the case, *United States v. Diaz*, that is relied upon most often to make the argument that real world records are needed to prove a drug dog's reliability actually accepted the concept of residual odor and stated that "a very low percentage of false positives is not necessarily fatal to a finding that a drug detection dog is properly trained and certified."[75] This analysis would change, it would seem, if the challenged drug dog made several false positive alerts during the training and certification process, that is, where a controlled setting obviates the residual odor argument.[76] In fact, courts have upheld searches where drug dogs have alerted to packages where drugs that the challenged canine was not trained to detect were found because the distinct possibility of residual odor existed.[77]

{¶ 38} Additionally, federal courts have dealt with the materiality and production of real world records of drug dogs on only three occasions.[78] In one of those cases, *United States v. Ollison*, as in this case, the defendant did not show that the real world records were material before requesting them.[79] Therefore, the district court avoided the issue and ordered the defendant to show why the

---

72. *United States v. Ludwig*, 10 F.3d at 1527.

73. *United States v. Outlaw* (C.A.5, 2003), 319 F.3d at 704; *United States v. Florez* (D.N.M. 1994), 871 F.Supp. 1411, 1421; *United States v. Trayer*, 898 F.2d at 808; *United States v. Johnson*, 660 F.2d at 22–23; *United States v. Robinson*, 707 F.2d at 815; *United States v. Solis* (C.A.9, 1976), 536 F.2d 880, 881–882; *United States v. Page* (E.D.Tenn.2001), 154 F.Supp.2d 1320, 1325; *Doe v. Renfrow* (N.D.Ind.1979), 475 F.Supp. 1012, 1025–1026.

74. *Jennings v. Joshua Indep. School Dist.* (C.A.5, 1989), 877 F.2d 313, 317.

75. *United States v. Diaz*, 25 F.3d at 396.

76. *United States v. Florez*, 871 F.Supp. at 1421.

77. *United States v. Outlaw*, 319 F.3d at 704; *United States v. Robinson*, 707 F.2d at 815.

78. *United States v. Gonzalez–Acosta*, 989 F.2d 384; *United States v. Wood* (D.Kan.1996), 915 F.Supp. 1126, reversed on other grounds *United States v. Wood* (C.A.10, 1997), 106 F.3d 942; *United States v. Ollison* (Jan. 10, 1995), N.D.Ill. No. 92 CR 365, 1995 WL 12300.

79. Id.

records were material.[80]

{¶ 39} Another case, *United States v. Gonzalez–Acosta*, decided by the Tenth Circuit, concerns the trial court's denial of the defendant's pretrial motion to subpoena all of the drug dog's records.[81] That case, however, uses logic that is applicable to the issue this court now faces in relation to Crim.R. 16(B)(1)(c). The *Gonzalez–Acosta* court held:

{¶ 40} "Defendant contends she made the requisite showing for pretrial production. We disagree. First, we do not believe the documents were relevant because the dog was certified on the day in question and because the dog properly alerted to the presence of contraband. See, generally, *United States v. McCranie* (10th Cir.1983), 703 F.2d 1213, 1218 (alert by explosives-sniffing dog not formally trained to detect drugs nonetheless created reasonable suspicion that defendant's suitcase contained contraband); * * * *United States v. Williams*, 726 F.2d 661, 663–64 (10th Cir.[1984]) (concluding dog alert was valid despite dog's somewhat anomalous behavior in detecting the presence of narcotics). * * * Indeed, had the dog's records indicated it had false-alerted in the past, defendant's ability to cross-examine would not have been enhanced because there is no doubt it correctly alerted in this instance. Moreover, based on defense counsel's extensive cross-examination of [the handler] at the suppression hearing, we simply cannot say the defendant was precluded from either preparing for the suppression hearing or from exploring the issue of dog reliability."[82]

{¶ 41} Furthermore, this same analysis was used by the District Court of Kansas in *United States v. Wood*, a case in which the federal equivalent to Crim.R. 16(B)(1)(c) was at issue and concerned the materiality and discoverability of a drug dog's real world records. The court started its analysis by stating that "the Fifth Circuit said there is no requirement that the government show the dog's past reliability in sniffing drugs."[83]

{¶ 42} The *Wood* court continued:

{¶ 43} "That trained and certified dogs may occasionally make false alerts is a fact, which in this court's opinion, does not detract from the accepted notion that a certified dog's alert creates a 'fair probability' of contraband being present. Both Tenth Circuit and Fifth Circuit precedent recognize that a probable cause showing must at a minimum prove that the dog is trained and currently certified.

---

80. Id.

81. *United States v. Gonzalez–Acosta*, 989 F.2d at 388–389.

82. *United States v. Gonzalez–Acosta*, 989 F.2d at 389.

83. *United States v. Wood*, 915 F.Supp. at 1136.

There may be circumstances where a more complete investigation is required, because the reliability presumed from certification and training is subject to question. These may include that the dog's training or certification was substandard, that the health of the dog was such as to possibly affect reliability, and that the circumstances of the particular search raise issues regarding the dog's reliability."[84]

{¶ 44} The court then concluded that "[i]n the absence of some other circumstance requiring a more detailed inquiry into [the drug dog's] reliability, the court will not require the government to produce the police service dog reports prepared on [the drug dog's] other searches or any other records of his performance."[85] Additionally, the court used the federal materiality standard from *Ross*[86] rather than the misstatement of the federal standard from *Lloyd*,[87] as the trial court did in this case, when it came to the conclusion that the drug dog's real world records were neither material nor discoverable under Crim.R. 16.[88]

{¶ 45} In conclusion, our review of the relevant cases reveals that federal courts are fairly uniform in adopting the majority standard, which states that real world records for drug dogs are neither material nor needed to challenge reliability.

### Subsection C: Canine Reliability in State Courts

{¶ 46} State courts also tend to follow the national trend, which states that a drug dog's training and certification records can be used to uphold a finding of probable cause to search and can be used to show reliability, if required, but canine reliability does not always need to be shown by real world records. However, state courts do not have the wealth of precedent federal courts have, and the decisions do not have the same continuity present in federal cases.

{¶ 47} As to the majority approach, a Washington appellate court decided to "premise canine reliability on a statement that the dog is trained."[89] A California court chose to follow the new trend of looking to a drug dog's training and

---

84. Id.

85. Id.

86. *United States v. Ross*, 511 F.2d at 762–763.

87. *United States v. Lloyd*, 992 F.2d at 351.

88. *United States v. Wood*, 915 F.Supp. at 1133–1137.

89. *State v. Gross* (1990), 57 Wash.App. 549, 550, 789 P.2d 317, overruled on other grounds, *State v. Thein* (1999), 138 Wash.2d 133, 148, 977 P.2d 582. Cf. *State v. Stanphill* (1989), 53 Wash.App. 623, 632, 769 P.2d 861.

certification.[90]   Additionally, courts have viewed false positive alerts by drug dogs as not hampering the challenged canine's reliability.[91]   In fact, the Court of Appeals of Idaho recognized, as have a number of federal courts, that drug dogs are trained to detect the residual odor of drugs; therefore, a false positive indication in a real world setting may not be a false positive alert in actuality. Rather, the Idaho court was swayed by the testimony that the challenged canine never registered a false positive alert to drugs in a controlled setting.[92]

{¶ 48} The Nebraska Court of Appeals also commented upon the ability of trained drug dogs to detect residual odor, but it deemed a challenged canine to be reliable because it found drugs on the search in question.   The court further questioned what should be considered to be too many false positive alerts by a drug dog before the challenged canine is considered to be unreliable, stating: "Although, a batting average for a baseball player of .600 would be spectacular, the evidence leaves me, and the trial judge, to our own devices in trying to figure out whether [the drug dog's] record shows that he is an 'all-star' or a 'bum' as a drug-detection dog."[93]

{¶ 49} Similar reasoning was used by at least two courts to discount a real world setting false negative/failure to alert.[94]   In fact, the Supreme Court of Illinois stated that "the failure to detect [drugs] in the other seven containers [ (the drug dog alerted to two of nine containers) ] indicates to us that defendants were more successful in their efforts to conceal the odor of the marijuana in those pieces of luggage."[95]

{¶ 50} To the contrary, four states, Tennessee,[96] Kansas,[97] Florida,[98] and Georgia,[99] state that the prosecution must prove the reliability of a drug dog in

---

90. *People v. Terrill* (June 14, 2002), Cal.App. No. A094126, 2002 WL 1308297.

91. Id.; *State v. Braendle* (2000), 134 Idaho 173, 175–176, 997 P.2d 634; *State v. Yum* (Jan. 6, 1998), Neb.App. No. A–97–992, 1998 WL 19484.

92. *State v. Braendle,* 134 Idaho at 175–176, 997 P.2d 634.

93. *Yum,* supra.

94. *People v. Campbell* (1977), 67 Ill.2d 308, 10 Ill.Dec. 340, 367 N.E.2d 949.   See, also, *State v. Pellicci* (1990), 133 N.H. 523, 537, 580 A.2d 710.

95. *People v. Campbell,* 67 Ill.2d at 318, 10 Ill.Dec. 340, 367 N.E.2d 949.

96. *State v. England* (Tenn.2000), 19 S.W.3d 762, 768–769.

97. *State v. Barker* (1993), 252 Kan. 949, 959–960, 850 P.2d 885.

98. *Matheson v. State* (2003), 870 So.2d 8.

99. *Warren v. State* (2002), 254 Ga.App. 52, 56, 561 S.E.2d 190; *Dawson v. State* (1999), 238 Ga.App. 263, 265–268, 518 S.E.2d 477.

order for the probable cause determination of a search to be upheld. The Supreme Court of Tennessee stated that it believed that "the finding of probable cause should turn on the reliability of the canine and that the trial court should ensure that the canine is reliable by an appropriate finding of fact. * * * Accordingly, in our view, the trial court, in making the reliability determination may consider such factors as: the canine's training and the canine's 'track record,' with emphasis on the amount of false negatives and false positives the dog has furnished. The trial court should also consider the officer's training and experience with this particular canine."[100]

{¶ 51} Yet it is interesting to note that in Colorado, the question of whether the reliability of a drug dog even needs to be considered is "left to the discretion" of the trial court.[101] So it is clear that state courts, though they deal with the same issues as federal courts, do not feel compelled to ameliorate their drug dog decisions with federal precedent.

### PART V: Conclusion

{¶ 52} As stated previously, the central question to be answered by this court in this case is whether the real world reports of Ringo's performance in the field are material to each appellee's defense of lack of probable cause to conduct a warrantless search of appellees' motor vehicle. To repeat, to be material for the purposes of the rule, the requested information must have "more than * * * some abstract logical relationship to the issues in the case."[102] The "touchstone of materiality is a 'reasonable probability' of a different result."[103] A " 'reasonable probability' is a probability sufficient to undermine * * * the outcome.' "[104]

{¶ 53} If this court adopts the majority view concerning the reliability of a drug dog, then Ringo's real world reports are immaterial to appellees' defense. If we decide to follow the minority view, specifically, *United States v. Diaz*, as it relates to the reliability of a drug dog, then those reports may be material in the preparation of appellees' defense.

{¶ 54} Initially, we note that the holdings of the Sixth Circuit Court of Appeals are not binding on this court; at best, they are persuasive, if applica-

---

100. *State v. England,* 19 S.W.3d at 768.

101. *State v. Reyes* (Colo.1998), 956 P.2d 1254, 1257, fn. 2.

102. *United States v. Ross,* 511 F.2d at 762.

103. *United States v. Jordan,* 316 F.3d at 1252, quoting *Kyles v. Whitley* (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490.

104. *State v. Johnston,* 39 Ohio St.3d 48, 529 N.E.2d 898, at paragraph five of the syllabus.

ble.[105] We therefore decline to adopt the minority view as set forth in *United States v. Diaz.*[106] Instead, we find the majority view, as embraced by several jurisdictions, persuasive.

{¶ 55} As a result, we conclude that proof of the fact that a drug dog is properly trained and certified is the only evidence material to a determination that a particular dog is reliable.[107] Proof that a drug dog is properly trained and certified may be established by means of testimony or through documentary proof.[108]

{¶ 56} In applying this standard to the case under consideration, we find that the trial court erred in ordering the state to produce Ringo's real world reports for examination by appellees.

{¶ 57} At the hearing on this matter, Trooper Arnold testified that she and Ringo began working together in April 2000. The team went through an initial

---

105. *P.D.M. Corp., Inc. v. Hyland–Helstrom Enterprises, Inc.* (1990), 63 Ohio App.3d 681, 579 N.E.2d 779, fn. 1

106. We are compelled to observe that in *United States v. Berry* (C.A.6, 1996), 90 F.3d 148, 153–154, the Sixth Circuit Court of Appeals cited *Diaz* for the proposition that, before a court can find that probable cause existed for the issuance of a search warrant, the training and reliability of a drug dog must be established. However, the *Berry* court then held: "* * * to establish probable cause, the affidavit [in support of the application for a search warrant] need not describe the particulars of the dog's training. Instead, the affidavit's accounting of the dog sniff indicating the presence of controlled substances and its reference to the dog's training in narcotics investigations was sufficient to establish the dog's training and reliability."

107. See *United States v. Sundby*, 186 F.3d at 876, citing *United States v. Kennedy* (C.A.10, 1997), 131 F.3d 1371, 1377, certiorari denied, 525 U.S. 863, 119 S.Ct. 151, 142 L.Ed.2d 123; *United States v. Berry*, 90 F.3d at 153. Additionally, see *United States v. Williams* (C.A.5, 1995), 69 F.3d 27, 28 ("Because a showing of a dog's reliability is unnecessary with regard to obtaining a search warrant, a fortiori, a showing of a dog's reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle."); *United States v. Gonzalez–Acosta*, 989 F.2d at 388–389 ( The false/positive-negative alert records and "all other records establishing the [drug] dog's [olfactory ability] * * * were [not] relevant because the dog was certified on the day in question and because the dog properly alerted to the presence of contraband. * * * Indeed, had the dog's records indicated it had false-alerted in the past, defendant's ability to cross-examine would not have been enhanced because there is no doubt that it correctly alerted in this instance."); *United States v. Massac*, 867 F.2d at 176 ("When the alert was given by the dog, we are satisfied that, at least when combined with the other known circumstances, probable cause existed to arrest."); *United States v. Hare*, 932 F.Supp. at 852 ("Reliability of the dog need not be shown.") *United States v. Outlaw*, 134 F.Supp.2d at 812 ("Accordingly, the Court finds that the Government need only prove that the canine unit was trained and certified in order to prove the reliability of the canine alert so as to establish probable cause."); *United States v. Wood*, 915 F.Supp. at 1136 ("[A] probable cause showing must at a minimum prove that the dog is trained and currently certified.").

108. *United States v. Diaz*, 25 F.3d at 394; *United States v. Wood*, 915 F.Supp. at 1136; *United States v. Stevenson* (S.D.Tex.2002), 274 F.Supp.2d 819, 822–823.

one-month training before they were certified. During that time, Trooper Arnold learned about drug dogs and how they work, how to perform a drug dog search, and how to work with Ringo in the field by performing searches of actual motor vehicles. Ringo was trained to detect the odor of cocaine, crack cocaine, methamphetamine, marijuana, hashish, heroin, and ecstasy. The trooper and Ringo received their certification on April 27, 2000. The certification must be renewed every two years.

{¶ 58} In October 2000, Trooper Arnold and Ringo attended a three-day seminar concerning drug odor detection and received a certificate of completion. Although she and Ringo were already certified for two years, Trooper Arnold and Ringo took advantage of the fact that a certification course was available in 2001 and were re-certified for another two-year period. The team was recertified again in March 2003. Arnold testified that Ringo had to achieve an 85 percent or better in the detection of drugs in a controlled setting in order to be certified to detect drugs in a patrol setting. Trooper Arnold also avowed that Ringo is an aggressive dog, that is, he jumps, scratches, and bites when he detects the odor of a drug.

{¶ 59} On cross-examination, Trooper Arnold could not testify as to how many times out of the approximately 500 times that Ringo was used in an investigation since 2000 that he alerted to the presence of drugs and none were found. She also testified that the real world reports, which consist of checking boxes, would indicate how many times he alerted in the last month but could not indicate that an allegedly false alert occurred when Ringo detected the residual odor of a drug that he was trained to detect. Therefore, the trooper stated that an accurate percentage of assessing Ringo's reliability could not be determined from an examination of the real world reports.

{¶ 60} A videotape recorder is located in Trooper Arnold's patrol car and is used to videotape stops and arrests, if any, made by the trooper. During the stop of appellees' vehicle, the trooper turned off the audio portion so that she could praise Ringo in order to "pump him up" for the search. She says things like "good boy" and does not want to be embarrassed by praising him.

{¶ 61} In his judgment entry, granting appellees' supplementary motion for the discovery of all of Ringo's real world records, the trial judge found that Trooper Arnold's inability to remember what percentage of time Ringo alerted and no drugs were found necessitated the discovery of Ringo's real world records. In addition, the court believed that Trooper Arnold was "consciously or unconsciously cueing unreliable responses" from Ringo by "pumping him up."

{¶ 62} Clearly, Trooper Arnold and Ringo were trained and certified on the day that the warrantless search of appellees' vehicle took place. Therefore,

under the standard adopted by this court, Ringo's real world reports are not material to a finding of reliability.

{¶ 63} Moreover, the trial court's rationale for finding that these reports are material is without merit. Because Trooper Arnold and Ringo are properly trained and certified, the fact that the trooper cannot provide a percentage of alleged false alerts is immaterial to a determination of Ringo's reliability. With regard to "cueing,"[109] our review of the videotape reveals that Trooper Arnold, with Ringo in the lead, walked to the driver's side of appellees' vehicle and, within a matter of a few seconds, Ringo alerted by jumping up and scratching at the left rear cargo area. There is no indication on the tape itself that Trooper Arnold was speaking to the canine or in any way cueing him to the location of the marijuana, a drug that Ringo was trained to locate.

{¶ 64} The state of Ohio's sole assignment of error is found well taken. Accordingly, the judgment of the Lucas County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings consistent with this judgment. The costs of this appeal are assessed to appellees.

Judgment reversed
and cause remanded.

MARK L. PIETRYKOWSKI, J., concurs.

ARLENE SINGER, J., concurs separately.

SINGER, Judge, concurring.

{¶ 65} I concur in the decision and finding of this court. In addition, I would follow the suggestion in *United States v. Wood,* 915 F.Supp. at 1136, as cited in Judge Handwork's decision. A challenge to reliability, based on the quality of the training of both the dog and the handler, the health of the drug dog, or any other factor particular to the facts of the case that could call into question the reliability of the search should not be foreclosed.

---

109. Handler cues are conscious or unconscious signals given from the handler that can lead a detection dog to where the handler thinks drugs are located. *United States v. $80,760.00 in U.S. Currency* (N.D.Tex.1991), 781 F.Supp. 462, 478, fn. 36.