[Cite as *State v. Jones*, 2019-Ohio-3704.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                      Court of Appeals No. WD-18-063

    Appellee                              Trial Court No. 2017CR0195

v.

Darnell Antonio Jones, Jr.              **DECISION AND JUDGMENT**

    Appellant                             Decided:  September 13, 2019

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} This matter is before the court on appeal from a September 5, 2017 order of

the Wood County Court of Common Pleas, denying appellant's motion to suppress

evidence obtained following a traffic stop.  The case proceeded to a jury trial, where

appellant was found guilty of one count contained of money laundering, a felony of the

third degree, and one count of possession of criminal tools, a felony of the fifth degree, both with forfeiture specifications. Finding no error, we affirm the judgment of the trial court.

## I. Facts and Procedural Background

{¶ 2} Appellant, Darnell Jones Jr., appeals the trial court's judgment denying his motion to suppress evidence, asserting that the trial court erred in refusing to suppress the evidence discovered through an unconstitutional search of his vehicle, and that he was denied due process and the effective assistance of counsel as guaranteed by the state and federal constitutions.

{¶ 3} In the early morning hours of March 21, 2017, Lieutenant Scott Wyckhouse of the Ohio State Highway patrol observed a red, Chevy Tahoe traveling northbound on I-75 near mile-marker 197 in northern Wood County. Wyckhouse visually estimated the speed of the vehicle as well above the 65 mph speed limit, estimating a speed of 80 mph. Wyckhouse testified that the vehicle was initially in the left lane, but after passing him, it moved to the center lane. After a short interval, the vehicle moved back to the left lane and Wyckhouse gave pursuit. After a mile or two, Wyckhouse made a traffic stop for the speeding offense and activated his blue emergency lights. Appellant stopped his vehicle just over the county line, in Lucas County, Ohio.

{¶ 4} As Wyckhouse approached the vehicle, he was surprised to see a passenger in the front passenger seat. The passenger, Trevon Lowman, had fully reclined his seat, behind the "B pillar" of the vehicle. Appellant told Wyckhouse that he and his cousin Tre were traveling from Tennessee to Michigan, in order to pick up a car for Tre.

2.

Although appellant identified Lowman as his cousin, he did not know his last name. Both individuals identified themselves as Michigan residents. Appellant provided a Michigan driver's license to Wyckhouse, and Lowman produced a Michigan identification card that was broken in half. Wyckhouse noted several cell phones in plain sight, as well as numerous air fresheners, candy wrappers, an open energy drink, and enough clutter to make the car appear "lived in." Appellant also had a Doberman puppy between the two center seats.

{¶ 5} Wyckhouse then approached the driver's side of the vehicle and asked appellant to exit the vehicle. When appellant exited the driver's seat, Wyckhouse performed a pat down for weapons with appellant's consent. Wyckhouse's pat down revealed two wads of cash totaling approximately $1,500 in one pocket and $2,000 in the other. Wyckhouse did not confiscate the money at this point, and placed appellant in the front seat of the patrol car.

{¶ 6} At 2:15:26, Wyckhouse called in appellant's driver's license information to dispatch, part of the usual process in a traffic stop, to confirm the identity of the person stopped. Wyckhouse also requested a "78," a computerized criminal check, believing possible criminal activity based on his observations. Additionally, Wyckhouse called in Lowman's information to dispatch. Because of the presence of criminal indicators, Wyckhouse called for a drug detection canine unit at 2:16:53 to sniff for the odor of illegal narcotics.

3.

**{¶ 7}** At 2:18:35, Sgt. Nathan Henn arrived on scene to provide assistance, and Henn conducted a pat down of passenger Lowman and separated him from appellant. Shortly thereafter, U.S. Border Patrol Agent Mike Lalonde and his canine officer, Misty, arrived on scene with Trooper Ann Malone.

**{¶ 8}** On the date of the traffic stop, Misty was certified to detect controlled substances, including marijuana, cocaine, methamphetamine, heroin, and ecstasy, and had additional certification to detect concealed humans. Misty was not certified as a currency detection canine. Misty alerted to appellant's vehicle, with neither appellant nor his passenger inside. Lalonde testified that an alert is a change in the canine's body posture or respiration. A subsequent search of the vehicle revealed a backpack under the Doberman containing almost $30,000 in cash, a black Pelican case[1] with large magnets attached, and 6 cell phones.

**{¶ 9}** The items seized were taken to the patrol post in Bowling Green, and after obtaining a search warrant for the phones, troopers were able to search one of the phones belonging to Lowman, and found photos of Lowman with large amounts of money. Trooper Ryan Stewart and his canine officer, Osso, also conducted a controlled sniff of the cash seized while at the post. Osso is certified to detect drugs, including marijuana, cocaine, methamphetamine, heroin, and any of their derivatives.[2]

---

[1] The case was identified through testimony, at the suppression hearing and at trial, as an object commonly used in drug trafficking.

[2] Appellant does not challenge this second canine sniff by Osso in the present appeal.

4.

{¶ 10} Appellant was indicted on April 20, 2017 in a two count direct indictment charging him with Count 1: possessing criminal tools with a specification, in violation of R.C. 2923.24(A)(C), a felony of the fifth degree, and Count 2: money laundering with a specification, in violation of R.C. 1315.55(A)(C)(C), a felony of the third degree. Appellant filed a motion to suppress on August 10, 2017, seeking to suppress all evidence obtained as a result of the traffic stop of appellant's vehicle by the Ohio State Highway Patrol on March 21, 2017.

{¶ 11} In his motion to suppress, appellant challenged the basis for the traffic stop, arguing that Wyckhouse did not have probable cause to initiate a traffic stop because he did not use his radar gun to specifically detect the speed of appellant's vehicle. The trial court noted Wyckhouse's testimony, that he in fact paced the vehicle at 67 mph in a 60 mph zone, and found this testimony was credible.

{¶ 12} In support of the drug sniff, the state presented Misty's valid canine detection certification, and appellant presented no evidence to refute this training and certification. The trial court denied the motion, finding probable cause for both the initial stop and subsequent search of the vehicle based on the alert of Misty.

{¶ 13} The matter proceeded to a two-day jury trial commencing January 25, 2017. The jury found appellant guilty of both counts contained in the indictment, and the trial court sentenced him to four years of community control with conditions. The trial court, furthermore, ordered $33,091 in cash forfeited. From this conviction, appellant filed a timely appeal.

5.

**{¶ 14}** Appellant asserts the following assignments of error:

I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS MOTION TO SUPPRESS.

II. APPELLANT WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS.

## II. Analysis

**{¶ 15}** Appellant's assignments of error each challenge the reliability of the canine officer's alert, considering its dual training and certification. In his first assignment of error, appellant argues the trial court committed plain error in not inquiring into the issue of dual certification as a factor in determining reliability. Based on the dual certification, appellant argues that the trial court should have granted the motion to suppress.

**{¶ 16}** Our review of a trial court's denial of a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). An appellate court defers to a trial court's factual findings made with respect to its ruling on a motion to suppress where the findings are supported by competent, credible evidence. *Id.*; *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). "[T]he appellate court must then independently determine, without

6.

deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 17} "The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures." (Citation omitted.) *State v. Brown,* 183 Ohio App.3d 337, 916 N.E.2d 1138, 2009-Ohio-3804, ¶ 9 (6th Dist.). Search of a motor vehicle following an investigative stop, however, is an exception to the Fourth Amendment warrant requirement, where the search is justified by "articulable suspicion of some other criminal activity[.]" *State v. Bordieri*, 6th Dist. Lucas No. L-04-1321, 2005-Ohio-4727, ¶ 20; *see also U.S. v. Ross*, 456 U.S. 798, 808, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

{¶ 18} The use of a drug dog to sniff the exterior of a vehicle, lawfully detained, is not a search within the meaning of the Fourth Amendment. *Bordieri* at ¶ 22. Thus, law enforcement officials do not need reasonable suspicion of drug related activity in order to subject a lawfully detained vehicle to a drug dog sniff. *Id.* "[W]hen a [drug] dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle." *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 22 (6th Dist.).

{¶ 19} Appellant challenges the trial court's denial of his motion to suppress as plain error. Appellant argues that, because Misty had dual certification, trained to alert and indicate the presence of concealed humans as well as illicit drugs, Misty most likely alerted to the residual human scent of appellant and his passenger, rather than any non-

7.

existent drugs. Therefore, appellant argues, the trial court could not have relied upon Misty's alert as reliable, and the subsequent search of the vehicle was without probable cause. Because trial counsel did not object to the dog sniff in seeking suppression, appellant argues that the trial court committed plain error in not inquiring further into Misty's reliability based on the dual certification, before finding Misty's alert reliable. Appellant fails to support his argument with any legal authority, however, and the evidence in the record supported the trial court's determination of reliability and probable cause.

{¶ 20} Appellant raised no challenge to the canine sniff at the suppression hearing. Because trial counsel did not object to Misty's certification, we review the issue of Misty's reliability for plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 15 (typically plain error review occurs "if a party forfeits an objection in the trial court."); *State v. Riggins*, 2017-Ohio-80, 80 N.E.3d 1156, ¶ 6 (9th Dist.) (plain error standard applies where defendant "did not object").

{¶ 21} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). A finding of plain error is three-fold, requiring (1) an error or deviation from law, (2) that the error is plain, or an obvious defect in the proceedings, and (3) that the error affected "substantial rights," altering the outcome of the trial. *Payne* at ¶ 16, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The burden is on the party asserting plain error to demonstrate such error. *Id*. at ¶ 17, citing *State v. Jester*, 32 Ohio St.3d 147, 150, 512 N.E.2d 962 (1987).

8.

{¶ 22} In order for this court to overturn the lower court's decision regarding its denial of appellant's motion to suppress, we must find the trial court committed plain error based on a deviation from the law that is plain or obvious, and that altered the outcome of the trial. Here, appellant fails to demonstrate any deviation by the trial court from the law governing reliability of a drug sniff.

{¶ 23} In *Florida v. Harris*, 568 U.S. 237, 245, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013), the United States Supreme Court held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert[,]" based on the following reasoning:

> If a dog on patrol fails to alert to a car containing drugs, the mistake usually will go undetected because the officer will not initiate a search. Field data thus may not capture a dog's false negatives. Conversely (and more relevant here), if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person. Field data thus may markedly overstate a dog's real false positives. By contrast, those inaccuracies--in either direction--do not taint records of a dog's performance in standard training and certification settings. There, the designers of an assessment know where drugs are hidden and where they are not--and so where a dog should alert and where he should not. The

9.

better measure of a dog's reliability thus comes away from the field, in controlled testing environments. For that reason, evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.

*Harris* at 245–46.

{¶ 24} Prior to the ruling in *Harris*, we reached a similar conclusion in *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 55 (6th Dist.), where we stated "proof of the fact that a drug dog is properly trained and certified is the only evidence material to a determination that a particular dog is reliable. Proof that a drug dog is properly trained and certified may be established by means of testimony or through documentary proof." (Citations omitted.) In this case, the trial court had both testimony and the certification documents in evidence, demonstrating Misty's training and certification for both concealed humans and drugs.

{¶ 25} Appellant concedes that Misty was "properly certified and reliable for the purposes stated in her certification." Misty's certification record, moreover, was properly introduced as evidence at the suppression hearing. The record, therefore, contradicts appellant's claim of plain error, as "the fact that a drug dog is properly trained and certified is the only evidence material to a determination that a particular dog is reliable." *Nguyen* at ¶ 55 (citations omitted.).

{¶ 26} Despite proper certification, however, appellant argues that the *dual* certification of Misty required the trial court to conduct additional inquiry into Misty's ability to differentiate between target odors, and specifically, Misty's "unsuitability as a

10.

drug detection dog in the context of traffic stops[.]" In support, appellant relies on *United States v. Summers,* 153 F.Supp.3d 1261 (S.D.Cal.2015). In relying on *Summers,* appellant mischaracterizes that decision as disqualifying a dual-purpose canine for use in drug interdiction, but dual certification was not a determinative issue in that case.

{¶ 27} In *Summers,* the court focused on whether the dog's training was sufficient, and whether the dog had actually alerted to the presence of an illegal odor. *Id.* at 1268. At hearing, the defendant presented an expert witness who refuted the reliability of the canine officer's certification. *Id.* "Defendant's expert testified that the records did not include necessary deployment records, and that the records did not adequately indicate the source and quantity of narcotics used." *Id.* at 1265. The expert also testified that, what officers construed as an alert was nothing more than interest, with no alert behavior seen in the video of the stop. *Id.*

{¶ 28} As to the additional training in detecting concealed humans, the expert was critical of using the canine officer while occupants remained inside their vehicle. *Id.* The training records, moreover, did not demonstrate any training or performance in that specific situation. *Id.* at 1261. Contrary to appellant's argument, dual certification did not provide the basis to suppress the evidence obtained from a search of the vehicle. Instead, the court found the officers lacked probable cause to search the trunk of the vehicle because of deficiencies in the certification records, and because of the lack of any alerting behavior exhibited by the dog. *Summers* at 1269.

{¶ 29} In this case, the trial court considered evidence of Misty's training and certification, and viewed the video of the stop. Furthermore, unlike the circumstances in

11.

*Summers,* troopers removed appellant and his passenger from the vehicle prior to the sniff, and Misty alerted to the vehicle containing a large amount of currency and materials used in the drug trade, consistent with her training in detecting drugs.[3] The law clearly provides that Misty's certification was sufficient to demonstrate her reliability in alerting to the presence of drugs.[4] Appellant, furthermore, points to no deficiencies in Misty's certification, relying instead on a broad theory that dual certification nullifies all certification. We find no basis to impose a duty on the trial court to refute this liability in the absence of any evidence to the contrary. Accordingly, appellant's first assignment of error, arguing plain error, is found not well-taken.

{¶ 30} In his second assignment of error, appellant argues that his trial counsel's failure to challenge the certification denied him his right to effective assistance of counsel. The right to effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as the Ohio Constitution, Article I, Section 10.

---

[3] We have previously noted testimony indicating canine officers can detect drug residue on currency associated with those in the drug trade. *See e.g. State v. Washington,* 6th Dist. Ottawa No. 2014-Ohio-1008 (describing the training and performance of dogs in trained in detecting drug residue on currency, with a dog alerting to drug residue on currency "just about every time.").

[4] Our consideration of a drug dog's alert to currency as an indication the presence of a drug or drug residue is limited to the challenge to probable cause. As appellant has not challenged the use of a separate canine officer, Osso, to demonstrate the presence of narcotics on the currency for use as evidence, we need not address this separate issue.

12.

{¶ 31} To prevail on a claim of ineffective assistance of counsel, appellant must demonstrate that his trial counsel's conduct "fell below an objective standard of reasonableness," based on "prevailing professional norms." *State v. Belton,* 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 132, quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Appellant must also demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Belton* at ¶ 132, quoting *Strickland* at 694.  In considering these factors, trial counsel is entitled to a strong presumption that their conduct "falls within the wide range of reasonable professional assistance." *Id.,* quoting *Strickland* at 689.

{¶ 32} In arguing his trial counsel was constitutionally ineffective, appellant relies on the premise that a canine officer certified to detect "concealed humans" has no ability to ignore either visible humans or residual human scent in visible areas of a vehicle.  Therefore, appellant contends, any vehicle that once contained a human would result in an alert by a dual- certified canine officer, and trial counsel was ineffective by failing to assert this challenge.  Once again, however, appellant cites to no authority that might lend support to his premise.  Appellee, in response, argues that even if trial counsel had challenged Misty's dual training and certification, such challenge would have been met with evidence, including expert testimony, demonstrating no merit in appellant's theory.

{¶ 33} Courts have found dual-certified canine officers to be reliable, with no concern for human scent confusion.  In *United States v. Lopez*, S.D. Cal. No. 13.

16CR1585-JLS, 2017 WL 2547302 (June 13, 2017), the Southern District of California considered whether visible human scent might affect the reliability of a drug sniff, where the dog is trained to detect both concealed humans and drugs. Based on expert testimony provided by a member of the Customs and Border Control (CBP) canine program, outlining the training and performance testing of the dogs, the court found the canine officer had the ability to differentiate between concealed humans and visible humans in the search area. *Lopez* at *4.

{¶ 34} As argued by appellee, similar expert testimony could have been proffered in the present case to refute appellant's theory of unreliability based on dual-certification. Appellant acknowledged that Misty received dual training as part of the CBP program described in *Lopez*. Appellant also failed to cite any authority in support of his theory that human scent confusion could taint a drug sniff, rendering the drug sniff unreliable for purposes of probable cause. At best, appellant references testimony of an expert, skeptical of a dog's ability to differentiate scents, upon which the trial court *did not* base its finding that police proceeded without probable cause. *See Summers,* 153 F.Supp.3d at 1269 (reversal based on the lack of any alert behavior by the dog, not based on unreliability of the dog).

{¶ 35} In asserting ineffective assistance of counsel, appellant must demonstrate that trial counsel's performance was deficient, and that, but for the deficient performance, the result would have been different. However, the legal challenge, that appellant argues his counsel failed to assert at the suppression hearing, appears to consist of a new theory

14.

not previously pursued under Ohio law. Appellant, furthermore, presents no authority to demonstrate his theory would have proven successful in challenging the reliability of the drug sniff in this case. Most significantly, appellant does not clearly argue Misty's alert was a "false positive," opting instead to introduce confusion without any challenge to the ultimate finding that drug residue tainted the currency seized by law enforcement. Considering the record and applicable law, we find it is not ineffective assistance to decline to raise meritless argument or present untested legal theories. *State v. McNeill,* 83 Ohio St.3d 438, 449, 700 N.E.2d 596 (1998). Accordingly, we find appellant's second assignment of error not well-taken.

### III. Conclusion

{¶ 36} Upon due consideration, we find appellant's assignments of error not well-taken, and affirm the judgment of the Wood County Court of Common Pleas, denying appellant's motion to suppress. Appellant is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____
                                                    JUDGE
Christine E. Mayle, P.J.        

Gene A. Zmuda, J.            _____
CONCUR.                                                   JUDGE

_____
                                                    JUDGE

15.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.