[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Fips*, Slip Opinion No. 2026-Ohio-1207.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1207

THE STATE OF OHIO, APPELLANT, *v.* FIPS, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Fips*, Slip Opinion No. 2026-Ohio-1207.]**

*Criminal law—Fourth Amendment to United States Constitution—Inquiring into a driver's-license status is reasonable under Fourth Amendment even though the reasonable suspicion that initially justified a traffic stop has been dispelled—Officer was entitled to finish carrying out traffic stop's mission by ensuring that vehicle was being operated by a properly licensed driver— When an officer discovers facts during a traffic stop that give rise to a reasonable suspicion of additional criminal activity, the officer may extend stop to investigate—Providing a Social Security number after failing to display a driver's license does not dispel suspicion that the driver is unlicensed—Court of appeals' judgment reversed and cause remanded.*

(No. 2023-1001—Submitted November 18, 2025—Decided April 7, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 111900, 2023-Ohio-2295.

_____

DETERS, J., authored the opinion of the court, which DEWINE, BRUNNER, HAWKINS, and SHANAHAN, JJ., joined. KENNEDY, C.J., concurred in judgment only, with an opinion. FISCHER, J., dissented and would dismiss the appeal as having been improvidently accepted.

**DETERS, J.**

{¶ 1} May a police officer extend a traffic stop after the initial basis for the stop has been dispelled? In this case, a police officer stopped a car because one of its headlights was out. Before asking dispatch to run the driver's information through law-enforcement databases, the officer learned that the headlight was in fact working. Nonetheless, the officer continued his inquiry. The driver was arrested on an outstanding warrant. Ultimately, drugs and a scale were found in the car, and the driver was charged.

{¶ 2} The Eighth District Court of Appeals concluded that the evidence discovered during the stop should have been suppressed. The court reasoned that the officer was required to end his inquiry once he learned that the reason for the traffic stop no longer existed. We disagree and instead adopt the reasoning of the lead opinion in *State v. Dunlap*, 2024-Ohio-4821. Under the United States Supreme Court's precedent, an officer conducting a lawfully initiated traffic stop may investigate the status of a driver's license even after reasonable suspicion is dispelled. Moreover, here, the driver failed to provide a driver's license upon the officer's request, so the officer had a new ground for reasonable suspicion to justify his investigation. We therefore reverse the judgment of the Eighth District.

## I. BACKGROUND

{¶ 3} When Officer Garron Rose and his partner Officer Peltz were out patrolling, Officer Rose observed a car driving with only one working headlight. The officers stopped the car, and Officer Rose spoke with its driver, Quentin Fips.

When Officer Rose asked Fips for his driver's license, Fips replied that he did not have it with him. Instead, Fips gave Officer Rose his name, date of birth, and Social Security number.

{¶ 4} While Officer Rose spoke with Fips, Officer Peltz walked towards the front of Fips's car and observed the headlights. After Officer Rose obtained Fips's information, Officer Peltz remarked that the fog light was out, not the headlight.

{¶ 5} The traffic stop continued despite the discrepancy with the headlight. Less than a minute after learning that the headlight might be working, Officer Rose provided Fips's Social Security number to dispatch. Dispatch informed Officer Rose that Fips had failed to reinstate his driver's license and that he had an outstanding arrest warrant. Based on this information, Officer Rose arrested Fips. After an extensive inventory search of the car that Fips was driving, the officers discovered crack cocaine and a digital scale.

{¶ 6} Consequently, the State of Ohio indicted Fips on two first-degree felonies: one count of drug trafficking and one count of drug possession, each with a forfeiture specification for the scale. Fips filed a motion to suppress the evidence seized during the traffic stop, arguing that Officer Rose did not have reasonable suspicion to stop the car, because both of the car's headlights were on at the time of the stop. The trial court denied Fips's motion.

{¶ 7} Eventually, Fips entered a no-contest plea to the indictment. The trial court accepted Fips's plea and found him guilty of one count of drug trafficking and one count of drug possession, with the accompanying specifications, and sentenced him to a mandatory five-year prison term.

{¶ 8} Fips appealed to the Eighth District, which reversed his convictions. 2023-Ohio-2295, ¶ 22 (8th Dist.). The Eighth District agreed with Fips that the evidence from the traffic stop should have been suppressed. *Id.* The lead opinion concluded that the traffic stop itself was legal because Officer Rose had an objective, reasonable belief that the car that Fips was driving had an inoperable

headlight. *Id.* at ¶ 15. Nonetheless, the lead opinion determined that the reason for the stop ended when Officer Rose discovered that both headlights were operational. *Id.* at ¶ 21. According to the lead opinion, the officers' continued detention of Fips to confirm his identity after the reason for the stop ended was unlawful.[1] *Id.* In light of its decision regarding the motion to suppress, the court of appeals declined to consider Fips's other assignments of error challenging his sentence and alleging his counsel was ineffective. *Id.* at ¶ 22.

{¶ 9} We accepted the State's appeal of the court of appeals' decision on its sole proposition of law:

> When an officer is confronted with evidence of an unrelated crime during a reasonably valid traffic stop, the officer is not required to abandon that investigation if the officer later learns that the stop may have been premised on a reasonable mistake.

*See* 2023-Ohio-3789.

## II. ANALYSIS

{¶ 10} Under the Fourth Amendment to the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is to be held inviolate.[2] A traffic stop is a seizure. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). To comply with the

---

1. The Eighth District's decision was fractured. The judge concurring in judgment only would have reversed on grounds different from those of the lead opinion, 2023-Ohio-2295 at ¶ 27, 30-32 (8th Dist.) (Keough, J., concurring in judgment only), while the dissenting judge would have affirmed the convictions, *id.* at ¶ 36-39 (8th Dist.) (Sheehan, J., dissenting).

2. In similar fashion, the Ohio Constitution guarantees that the "right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated." Ohio Const., art. I, § 14. Fips does not argue that the Ohio Constitution offers greater protection than the Fourth Amendment. We thus limit our analysis to whether the traffic stop violated the Fourth Amendment.

Fourth Amendment, an officer executing a traffic stop must have "a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 2008-Ohio-4539, ¶ 7. In this case, no one disputes that the initial traffic stop was lawful under the Fourth Amendment.[3] What Fips does dispute is whether, consistent with the Fourth Amendment, the officer was permitted to extend the traffic stop to verify Fips's information with dispatch after the officer's initial reasonable, articulable suspicion that Fips was driving without with a nonworking headlight was dispelled.

{¶ 11} The State and amicus curiae, the Ohio Attorney General, argue that extension of the stop was lawful based on two rationales. They ask this court to follow the lead opinion of *Dunlap*, 2024-Ohio-4821, which explains that an officer may complete the mission of a lawfully initiated stop—including verification of the driver's identity and license status—even if the initial reasonable, articulable suspicion is dispelled. Furthermore, they argue that before Officer Rose learned the headlight might be operational, new and intervening reasonable suspicion arose because Fips failed to produce a driver's license.

{¶ 12} We conclude that the extension of the traffic stop in this case was reasonable. In reaching this conclusion, we adopt *Dunlap*'s reading of *Rodriguez v. United States*, 575 U.S. 348 (2015). *See Dunlap* at ¶ 23 (lead opinion). Under *Rodriguez*, part of the mission of a traffic stop is to confirm that the driver is validly licensed. *Rodriguez* at 355. And once a traffic stop has been validly initiated, an officer is entitled to complete the mission of the stop, even after the initial reasonable suspicion has been dispelled. *Dunlap* at ¶ 23-24 (lead opinion). We

---

3. Although Fips challenged the lawfulness of the initial stop in his appeal to the Eighth District, he has abandoned that argument before this court. The lead opinion in the Eighth District concluded that the initial stop was lawful. 2023-Ohio-2295 at ¶ 15-16 (8th Dist.). In his merit brief, Fips does not challenge that conclusion or otherwise argue that the initial stop was unlawful.

also conclude that Fips's failure to produce a driver's license justified Officer Rose's extension of the stop to confirm whether Fips was a licensed driver.

### A. Confirming the identity and license status of a driver is part of the mission of a stop that may be completed even if an officer's initial suspicion is dispelled

{¶ 13} The Supreme Court of the United States has observed that for Fourth Amendment purposes, a traffic stop is akin to a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1 (1968), rather than an arrest, *Rodriguez* at 354. A "seizure for a traffic violation justifies a police investigation of that violation." *Id*. "[T]he tolerable duration of police inquiries in the traffic-stop context" is tied to the mission of the stop: "to address the traffic violation that warranted the stop" and "to attend to related safety concerns." *Id.* The Court's decision in *Rodriguez* arose in a different context from the case at hand: whether use of a drug-sniffing dog had unlawfully extended the duration of a traffic stop. *Id.* at 353. However, in *Dunlap*, we considered *Rodriguez*'s implications for traffic stops that continue after the stopping officer discovers that the initial factual basis for the stop was mistaken.

{¶ 14} In *Dunlap*, an officer ran a registration check on a passing car and discovered that the registered owner had a suspended driver's license. Suspecting that the suspended owner was driving the car, the officer initiated a traffic stop. The officer noticed as he walked towards the car that the driver, who was an African-American male, was not the registered owner, who was a white female. Nonetheless, the officer continued the traffic stop and asked the driver for his license. The officer discovered that the driver had a suspended license. Acting on this information, the officer performed an inventory search in preparation for impound of the car and discovered a firearm and a loaded magazine.

{¶ 15} In a split decision, a majority of this court concluded that the officer did not violate the Fourth Amendment when he investigated whether the driver had a valid driver's license. *Dunlap*, 2024-Ohio-4821, at ¶ 18 (lead opinion); *see also id.* at ¶ 36 (Donnelly, J., concurring in judgment only), and *id.* at ¶ 40-41 (Stewart,

J., concurring in judgment only). The lead opinion applied *Rodriguez* to reach this conclusion. *Id.* at ¶ 19-28 (lead opinion). It explained that under *Rodriguez*, "once an officer has initiated a lawful stop, the officer may make ordinary inquiries incident to the stop, including checking the driver's license status." *Id.* at ¶ 23 (lead opinion). An officer is permitted to complete these ordinary inquiries—part of the mission of the stop—"even after the initial reason for the stop was resolved." *Id.* at ¶ 24 (lead opinion).

**{¶ 16}** We agree with the *Dunlap* lead opinion's reading of *Rodriguez*. Under the Supremacy Clause of the U.S. Constitution, U.S. Const., art.VI, cl. 2, United States Supreme Court holdings control our interpretation of the Fourth Amendment. *See Dunlap* at ¶ 29 (lead opinion), citing *Cooper v. Aaron*, 358 U.S. 1, 18 (1958). Therefore, we hold that inquiring into a driver's license status is reasonable under the Fourth Amendment even though the reasonable suspicion that initially justified the stop has been dispelled.

**{¶ 17}** With that in mind, Officer Rose's efforts to verify Fips's license status did not violate the Fourth Amendment. The facts here are even more straightforward than in *Dunlap*. Within the first few moments of the traffic stop, Officer Rose asked Fips whether he had his driver's license. Fips admitted that he was not carrying it. Following this disclosure, Officer Rose asked for, and obtained, Fips's Social Security number, date of birth, and name. This happened before additional observation called the basis for initiating the stop—a nonoperational headlight—into question. So when Officer Rose asked Fips for his information, Officer Rose still had a reasonable suspicion that one of the headlights was out. And even after doubt was cast on the basis for his initial suspicion, Officer Rose was entitled to finish carrying out the stop's mission by checking Fips's information with dispatch to ensure "that the vehicle was being operated by a properly licensed driver," *Dunlap* at ¶ 21 (lead opinion), citing *Rodriguez*, 575 U.S. at 355, 356.

### B. Fips's failure to provide a driver's license established new and independent reasonable, articulable suspicion justifying the traffic stop

{¶ 18} Officer Rose's extension of the traffic stop was justified for a second reason: newly developed reasonable, articulable suspicion. When an officer discovers facts during a traffic stop that give rise to a reasonable suspicion of criminal activity, the officer may extend the traffic stop to investigate. *State v. Hale*, 2024-Ohio-4866, ¶ 24. This is so even if the suspected criminal activity is "beyond that which prompted the initial stop." *State v. Batchili*, 2007-Ohio-2204, ¶ 15. That is the situation here.

{¶ 19} Shortly after initiating the stop, Officer Rose learned that Fips was not carrying a driver's license. Officer Rose could reasonably infer from this information that Fips might not have a valid driver's license. Operating a motor car without a valid driver's license is a crime. *Hale* at ¶ 21; R.C. 4510.12(A)(1). Reasonable suspicion that the driver of a car does not have a valid driver's license justifies a traffic stop. *Kansas v. Glover*, 589 U.S. 376, 381-382, 386 (2020). Thus, Officer Rose could investigate his suspicion that Fips was unlicensed without offending the Fourth Amendment.

{¶ 20} The opinion concurring in judgment only from the Eighth District took the position that Fips's failure to produce a driver's license did not provide new reasonable, articulable suspicion that Fips was violating the law. 2023-Ohio-2295 at ¶ 27 (8th Dist.) (Keough, J., concurring in judgment only). Under R.C. 4507.35(A), however, someone driving a motor vehicle is required to "display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer." A violation of R.C. 4507.35(A) is a misdemeanor. R.C. 4507.35(B)(1). According to Judge Keough, Fips did not violate R.C. 4507.35(A), because he provided "satisfactory proof" of a driver's license when he voluntarily told Officer Rose his name, date of birth, and

Social Security number. 2023-Ohio-2295 at ¶ 27 (8th Dist.) (Keough, J., concurring in judgment only). We do not find this position persuasive.

{¶ 21} Furnishing a name, date of birth, and Social Security number does not, on its own, prove that a driver is validly licensed. After all, every United States citizen and some noncitizens are eligible to receive a Social Security number. 20 C.F.R. 422.104(a). Social Security numbers are typically assigned to newborn children. *See* 20 C.F.R. 422.103(b)(2). Because a person may have a Social Security number but not a valid driver's license, a Social Security number does not shed light on a driver's license status until the information is run through law-enforcement databases.

{¶ 22} Whether providing a Social Security number in lieu of a driver's license satisfies R.C. 4507.35(A) in circumstances in which an officer is eventually able to confirm that the driver does have a valid driver's license is a question for another day. Those facts are not before us. We hold here that providing a Social Security number after failing to display a driver's license is not enough to dispel suspicion that the driver is unlicensed.[4]

### C. *Fips did not preserve challenges to the search of his car or to his arrest*

{¶ 23} A brief word about a couple of Fips's arguments: Fips contends that he was improperly arrested before Officer Rose had confirmed the validity of the outstanding warrant. Additionally, he challenges the lawfulness of the timing and extent of the search of the car. But Fips did not raise these arguments in his motion to suppress or in his assignment of error in the Eighth District regarding the denial

---

4. Fips argues in his merit brief that the State's appeal should be dismissed as improvidently accepted for a variety of reasons that include the State's failure to preserve error, problems with the factual record, and antecedent statutory-interpretation questions that were not addressed in the Eighth District's lead opinion. After filing his merit brief, Fips filed a motion to dismiss the appeal on the same grounds. This court disposed of these arguments when it unanimously denied Fips's motion to dismiss. 2025-Ohio-2550.

of the motion to suppress.[5]  Thus, those arguments are forfeited.  *See State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10 ("a party ordinarily may not present an argument on appeal that it failed to raise below").

### III.  CONCLUSION

{¶ 24} Under *Rodriguez*, the mission of a lawful traffic stop includes confirming that a licensed driver is in the driver's seat of the car.  575 U.S. at 355.  This remains true even if further investigation dispels the reasonable suspicion that prompted the stop.  *Dunlap*, 2024-Ohio-4821, at ¶ 24-25.  Thus, Officer Rose's prompt efforts to confirm that Fips possessed a valid driver's license were reasonable under the Fourth Amendment.  What's more, Fips's failure to produce a driver's license gave Officer Rose reasonable, articulable suspicion that Fips was driving without a valid driver's license.  This new suspicion permitted Officer Rose to extend the traffic stop to run Fips's information and confirm his driver's license status.  We therefore reverse the judgment of the Eighth District Court of Appeals and remand the cause for consideration of Fips's remaining assignments of error.

Judgment reversed
and cause remanded.

_____

**KENNEDY, C.J., concurring in judgment only.**

{¶ 25} I concur in this court's judgment reversing the judgment of the Eighth District Court of Appeals and remanding this cause to that court for consideration of the remaining assignments of error.  Appellee Quentin Fips's rights under the Fourth Amendment to the United States Constitution were not violated, because Officer Garron Rose had an unbroken chain of reasonable suspicion throughout the traffic stop.  However, I disagree with the majority that

_____

5. Fips challenged the scope of the search of his car in the Eighth District in the context of his assignment of error regarding ineffective assistance of counsel.  However, his ineffective-assistance-of-counsel claim is not at issue here.

the lead opinion in *State v. Dunlap*, 2024-Ohio-4821, supports this court's judgment, because *Dunlap* is not on point here. Therefore, I concur in judgment only.

## Facts

{¶ 26} While I agree with the facts recited by the majority, I highlight those most pertinent to this opinion here. On December 10, 2018, Officer Rose stopped a vehicle for having only one functioning headlight. Rose approached the driver, Fips, and requested his driver's license. Fips stated that he did not have his license on his person but provided his name, date of birth, and Social Security number so that Rose could check the status of Fips's driving privileges. When Rose walked to the back of Fips's vehicle to radio dispatch and check that status, Rose's partner, Officer Peltz, informed Rose that Rose was mistaken about the headlight: The nonfunctioning light was a fog light, not a headlight. Despite that new information, Rose proceeded to radio dispatch and verify the status of Fips's driving privileges. In response, dispatch informed Rose that Fips was "suspended and had a warrant," resulting in Fips's arrest.

## Law and Analysis

{¶ 27} In deciding this case, the majority needlessly adopts the principle— articulated in the lead opinion in *Dunlap*—that an officer may continue detaining a driver to complete the traffic-stop mission even after the suspicion leading to the stop has been dispelled, *id*. at ¶ 24-29 (lead opinion). The majority errs in doing so because the facts of this case are not comparable to the facts in *Dunlap*. Here, Officer Rose constitutionally continued the stop because he had a reasonable suspicion that Fips had committed an independent crime before Rose discovered his mistake regarding the headlight.

{¶ 28} *Dunlap* involved a very different kind of traffic stop. *See* 2024-Ohio-4821 at ¶ 5 (lead opinion); *see also id.* at ¶ 44 (Kennedy, C.J., dissenting). There, Officer Andrew Centrackio was running registration checks on the license

11

plates of passing vehicles. Among the vehicles he checked was a Kia Forte owned by Jessica Dunlap. The registration check revealed that Dunlap, a white female, had a suspended license. On the authority of *Kansas v. Glover*, 589 U.S. 376, 378 (2020), this gave Centrackio a reasonable suspicion of criminal activity—operating a motor vehicle with a suspended license—and resulted in Centrackio's making a traffic stop. *Dunlap* at ¶ 5, 17 (lead opinion); *see also id.* at ¶ 43 (Kennedy, C.J., dissenting). When Centrackio approached the vehicle, though, he discovered that the driver was a black male. Despite losing his reasonable suspicion that the driver had committed a crime, Centrackio prolonged the stop, requested the driver's identification, and learned that the driver also had a suspended license.

{¶ 29} The lead opinion noted that such a traffic stop is reasonable as long as "'the officer lacks information negating an inference that the owner is the driver of the vehicle.'" *Id.* at ¶ 17 (lead opinion), quoting *Glover* at 378. Despite the fact that the officer in *Dunlap* discovered upon approaching the vehicle that the owner was *not* the driver of the vehicle, a plurality of this court concluded that the officer did not unconstitutionally prolong the stop. *Id.* at ¶ 29 (lead opinion). In doing so, the plurality relied on *Rodriguez v. United States*, 575 U.S. 348 (2015), in which the United States Supreme Court held that "'[a]uthority for [a] seizure…ends when tasks tied to the *traffic infraction* are—or reasonably should have been—completed.'" (Emphasis added in *Dunlap*.) *Dunlap* at ¶ 51 (Kennedy, C.J., dissenting), quoting *Rodriguez* at 354. *Rodriguez* "never directly addressed the reasonableness of a seizure in which the officer's reasonable suspicion for initiating the stop is dispelled by evidence obtained prior to the officer's extending the stop to make informational inquiries." *Id.* at ¶ 52 (Kennedy, C.J., dissenting). Nonetheless, *Dunlap*'s lead opinion incorrectly read *Rodriguez* as allowing law enforcement to request a driver's license as part of a traffic stop's mission even if the officer first dispels all reasonable suspicion. *Id.* at ¶ 60 (Kennedy, C.J., dissenting).

12

{¶ 30} Here, the majority accepts that logic and formally adopts the principle adopted in *Dunlap*'s lead opinion as the law of Ohio. Majority opinion, ¶ 12, 16. Doing so is wrong. In *Dunlap*, the officer initiated a traffic stop because he suspected that the owner was driving with a suspended license. Once the officer realized that the driver was a black male, not a white female, any belief that the driver had committed a crime was dispelled. Therefore, there was a period when the officer had no reasonable suspicion of any criminal activity and, consequently, had no reason to continue the stop. *Dunlap* at ¶ 46 (Kennedy, C.J., dissenting).

{¶ 31} In contrast, here, Officer Rose had an unbroken chain of reasonable suspicion. Rose stopped Fips based on reasonable suspicion that Fips had committed a crime: driving without two functioning headlights. After initiating the traffic stop, Rose approached the vehicle and asked for Fips's driver's license. Then, before Rose realized his mistake regarding the headlight, Fips admitted to not having his license with him. Accordingly, at the time Rose still suspected Fips of operating a vehicle without two functioning headlights, specific articulable suspicion that Fips was committing another crime—driving without a valid license—arose. *See State v. Mays*, 2008-Ohio-4539, ¶ 7 ("a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime"). Consequently, at that point, Rose had reasonable suspicion of two separate criminal acts. It was only later that he discovered his mistake and lost his belief that Fips had a faulty headlight. Nevertheless, he had not lost the reasonable suspicion that Fips was driving without a valid license. Therefore, Rose had reasonable suspicion of criminal activity throughout the entirety of the stop.

{¶ 32} Overall, then, the facts show that this case and *Dunlap* involve two different questions. *Dunlap* addressed whether an officer could prolong a stop after losing any constitutional reason to do so because of a gap in time when no reasonable suspicion existed. Conversely, here we are asked whether an officer

may continue to detain a driver when the officer at all points maintains reasonable suspicion of some crime being committed. Under this court's precedent, the answer to that distinct question is yes. *See State v. Batchili*, 2007-Ohio-2204, ¶ 15; *see also State v. Hale*, 2024-Ohio-4866, ¶ 23-24. Therefore, the majority's reliance on *Dunlap* is misplaced as the facts in that case greatly differ from the facts before us today.

**{¶ 33}** For these reasons, I concur in judgment only.

———————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen W. Knapp and Gregory J. Ochocki, Assistant Prosecuting Attorneys, for appellant.

Elizabeth R. Miller, Ohio Public Defender, and Timothy B. Hackett, Assistant Public Defender, for appellee.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

———————————